<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CASSANDRA VALERIE BEAMAN, STEFAN BROOKS, and LAURA ROSELLI, individually and on behalf of others similarly situated, <br><br>             Plaintiffs, <br><br>         v. <br><br> BANK OF AMERICA, N.A., <br><br>             Defendant. | Case No. 2:21-cv-20561 (BRM) (LDW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Bank of America, N.A.'s ("BOA") Motion to Dismiss (ECF No. 55) the Third Amended Class Action Complaint ("TAC") (ECF No. 52), filed by Plaintiffs Cassandra Valerie Beaman ("Beaman"), Stefan Brooks ("Brooks"), and Laura Roselli ("Roselli") (collectively, "Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated. Plaintiffs filed an Opposition. (ECF No. 56.) BOA filed a Reply. (ECF No. 57.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, BOA's Motion to Dismiss (ECF No. 55) is **GRANTED IN PART** and **DENIED IN PART.**

## I.  BACKGROUND[1]

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the TAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the [TAC]." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### A.  Factual Background

Plaintiffs are residents of the State of New Jersey, who lost their jobs during the COVID-19 pandemic (the "Pandemic"), and who received and relied upon New Jersey Department of Labor & Workforce Development[2] ("LWD") unemployment and other public benefits, administered through their respective BOA accounts, and accessible by a BOA LWD debit card. (ECF No. 52 ¶¶ 1, 9–11.) BOA is a Delaware corporation and financial institution with an exclusive contract to administer unemployment benefits and other payments through LWD debit cards and accounts (the "Contract"). (*Id.* ¶ 12.) Pursuant to the Contract, Plaintiffs and Class Members, which include all others similarly situated to Plaintiffs, received periodic payments through the BOA-issued prepaid debit cards, which are linked to individual BOA depository accounts, to access their benefits. (*Id.* ¶ 2.)

---

[1] The factual background and procedural history of this matter are well known to the parties and were previously recounted by the Court in the July 27, 2023 Opinion. (ECF No. 44.) The Court has amended and supplemented these sections to the extent necessary.

[2] The TAC identifies LWD as an agency of the State of New Jersey responsible for administering various benefit programs, including for New Jersey residents who are low-income or unemployed, like unemployment insurance benefits, pandemic unemployment assistance benefits, pandemic emergency unemployment compensation benefits, disability insurance benefits, and paid family leave benefits. (ECF No. 52 ¶ 14.)

Plaintiffs submit, upon information and belief, BOA and LWD entered into the Contract some time prior to 2020. (*Id.* ¶ 15.) At all relevant times thereafter, LWD distributed benefits pursuant to the Contract, through BOA-issued and administered debit cards. (*Id.* ¶ 17.) Under the terms of the Contract, BOA would disperse to each claimant the entire amount authorized by LWD, without commingling the benefits with any other funds, and without any alteration or adjustment. (*Id.* ¶ 20.) In exchange, BOA agreed to fully protect LWD debit cardholders in the event they became victims of fraud. (*Id.* ¶ 18.) Specifically, BOA agreed to comply with all Electronic Fund Transfers Act ("EFTA") requirements and timelines with respect to error resolution, and BOA extended their "Zero Liability protection on disputed claims" to the transactions. (*Id.* ¶ 18.) The Contract between LWD and BOA was contingent on BOA's description of their error resolution process. (*Id.* ¶ 19.)

However, Plaintiffs allege BOA failed to secure Plaintiffs' and Class Members' personally identifiable information and other sensitive debit card and account information in a reasonably secure manner. (*Id.* ¶ 21.) Specifically, BOA issued LWD cards without industry-standard, fraud-preventing Europay, Mastercard, and Visa ("EMV") chips, which BOA has used on all of its regular consumer debit cards since 2014. (*Id.* ¶ 2.) Further, BOA failed to take reasonable steps to ensure that the Plaintiffs' and Class Members' personally identifiable information was appropriately handled by BOA's subcontractors, employees, and agents with access to said information. (*Id.*) As a result, both Plaintiffs' and Class Members' cardholder information has been obtained by unauthorized third parties in a series of security breaches, resulting in unauthorized transactions on their accounts and access to their personal information. (*Id.* ¶¶ 22–23.)

1. <u>Evolution of Fraud-Combatant Technology Standards</u>

Plaintiffs assert that from the 1960s until approximately ten years ago, banks used magnetic

stripes to store consumer information on debit and credits cards in the United States. (*Id.* ¶ 25.) However, because the stripes are static and easily readable, they are also highly susceptible to fraud. (*Id.* ¶ 26.) Through a process called "skimming," third parties can access and use information from the card to clone it and conduct unauthorized transactions. (*Id.*) Skimming has resulted in hackers capturing the personal data of over tens of millions of people. (*Id.* ¶ 27.)

To combat the fraud enabled by magnetic stripes, banks have adopted EMV chip technology as the industry standard. (*Id.* ¶ 28.) EMV chips are "dynamic" and create a unique signature for every transaction, rendering debit card data from past purchases useless to hackers. (*Id.*) BOA, specifically, began using EMV chips in corporate credit cards for customers who regularly traveled outside of the United States in 2011. (*Id.* ¶ 29.) In 2014, BOA announced it would use chip technology on all new and reissued consumer debit cards to "increas[e] card security." (*Id.* ¶ 30.) By 2015, banks, generally, began a shift toward EMV chip cards, and by 2017, the cards became the industry norm. (*Id.* ¶ 31.) On BOA's website, BOA acknowledges that EMV chip technology is the security standard, is more secure, and makes a card more difficult to counterfeit or copy. (*Id.* ¶ 33.) Still, BOA issued LWD debit cards without EMV chips to hundreds of thousands of New Jerseyans—Plaintiffs and Class Members—which Plaintiffs allege resulted in predictable and rampant fraud. (*Id.* ¶ 34.)

### 2. BOA's Representations to Cardholders

In a Cardholder Agreement on BOA's website, BOA represented they would be responsible for unauthorized transactions on their LWD debit cards or accounts because of the bank's "zero liability" policy. (*Id.* ¶ 35.) BOA also represented they were available twenty-four hours a day, seven days per week, to receive reports of any unauthorized transactions, and would promptly investigate the transaction to determine whether it was unauthorized within ten business

days. (*Id.*) If the bank took longer than ten business days to investigate, BOA would credit the account for the amount believed to be in error. (*Id.*) Plaintiffs allege this agreement was in effect at the time Plaintiffs received their benefits and has been effective over the duration relevant to this case. (*Id.* ¶ 36.)

### 3.   Third-Party Fraud of LWD Debit Card Accounts

In the spring of 2020, the Pandemic resulted in hundreds of thousands of workers losing their jobs, and the state's unemployment rate skyrocketed to record heights. (*Id.* ¶ 37.) Since the start of the Pandemic in 2020, LWD received over 200,000 claims for unemployment benefits, and BOA issued thousands of LWD debit cards to New Jersey residents. (*Id.* ¶ 38.) Tens of thousands of those debit cardholders have been victims of fraud during the Pandemic, and tens of millions of dollars have been stolen from their accounts. (*Id.* ¶ 39.) The reported fraud has occurred in various forms, including massive ATM withdrawals, thousand-dollar charges at luxury vendors, and repeated transactions with food delivery services. (*Id.* ¶ 40.) Criminals have also exploited the security vulnerabilities to misappropriate cardholder information. (*Id.* ¶ 41.) Plaintiffs claim the increase in fraud during the Pandemic was foreseeable, but BOA nonetheless failed to take reasonable measures to prepare for and prevent the fraud. (*Id.* ¶ 42.)

### 4.   BOA's Pre-Suit Response to Fraud

After the increase in fraudulent activity, BOA failed to employ reasonable procedures for monitoring, detecting, stopping, and notifying Plaintiffs and Class Members about suspicious transactions; failed to answer customer service phone lines it advised LWD cardholders to call; established "customer service" procedures that frustrated Plaintiffs' and Class Members' efforts to file fraud claims; closed fraud claims without a reasonable and good faith investigation; reversed "permanent" credits previously granted for unauthorized transitions without good faith basis and

without notice to LWD cardholders; failed to extend provisional credit to LWD cardholders; and indefinitely froze and blocked accounts of the cardholders who reported third-party fraud on their accounts. (*Id.* ¶ 43.) This is due, in part, to BOA's failure to adequately staff its call centers and provide reasonable levels of assistance to the predictably large number of cardholders seeking assistance during the pandemic. (*Id.* ¶ 44.)

Since October 2020, BOA had a policy and practice of automatically and summarily denying fraud claims of LWD debit cardholders without adequate investigation or explanation, using the bank's automated fraud filter ("Claim Fraud Filter"). (*Id.* ¶ 45.) When a LWD debit cardholder reported an unauthorized transaction, the Claim Fraud Filter flagged the report and, within a day or two of the complaint, sent a form letter closing the cardholder's claim before investigating the claim. (*Id.*) LWD debit cardholders who have called the bank for further information have been given erroneous instructions or told they could not be helped, even after providing detailed documentation in support of their claims. (*Id.* ¶ 46.) Even those whose claims were reopened for investigation were not issued provisional credit pending completion of BOA's investigation. (*Id.*) BOA's practice of automatically denying fraud claims of LWD debit cardholders allowed the bank to circumvent its obligations under EFTA and Regulation E, which require the bank to issue provisional credit if an investigation is not completed in ten days, and to complete the investigation in no more than forty-five days. (*Id.* ¶ 47.) Further, BOA retroactively rescinded funds that were "permanently" credited to LWD debit cardholder victims by debiting the amount from their accounts without notice or explanation, and sometimes leaving the cardholders with a negative balance. (*Id.* ¶ 48.) This would leave those cardholders without access to benefits because the LWD benefit payments paid off the negative balance and were not available for use. (*Id.*)

Around the same time, BOA began implementing another policy and practice of automatically and indefinitely freezing or blocking accounts without notice, explanation, or opportunity to be heard, based upon the results of the bank's Claim Fraud Filter. (*Id.* ¶ 49.) When an account is frozen, the cardholder cannot access any funds in the account, and further, LWD benefits payments are not accepted in the account. (*Id.*) As a result, the cardholders who are victims of third-party fraud are then also deprived of access to their benefits at the hands of BOA. (*Id.*) Many accounts were frozen for months without additional information. (*Id.* ¶ 50.) If a LWD debit cardholder wanted to re-access their frozen LWD account, BOA required the cardholder to re-establish their identity and re-verify their eligibility before re-opening the account. (*Id.* ¶ 51.) Even after cardholders complied with these requirements, BOA still failed to unfreeze some accounts. (*Id.* ¶ 52.)

LWD debit cardholders whose fraud claims have been denied or whose accounts were frozen have been unable to reach BOA's customer service hotline. (*Id.* ¶ 53.) BOA failed to appropriately staff its call centers in a manner that would provide reasonable levels of assistance to the predictably large volume of cardholders seeking assistance during the Pandemic. (*Id.* ¶ 54.) The service agents who were hired were not adequately trained and were not empowered to investigate or resolve fraud claims. (*Id.*) Instead, cardholders were repeatedly kept on hold, sometimes for hours, waiting to speak to a live agent, or they were disconnected, hung up on, or treated rudely by overwhelmed agents. (*Id.* ¶ 55.) BOA representatives also provided erroneous information regarding the cardholders' accounts. (*Id.* ¶ 56.)

Further, BOA has failed to notify their cardholders within twenty-one days of any changes to their ability to initiate electronic fund transfers from their LWD debit card accounts. (*Id.* ¶ 64.) Plaintiffs and Class Members allege BOA decreased their access to their accounts because of

freezes and/or holds placed on those accounts, but were not given written notice of those changes. (*Id.* ¶¶ 65–66.) BOA continues to freeze and/or block thousands of cardholders' accounts without notice, depriving Class Members of their benefits. (*Id.* ¶ 67.)

Furthermore, BOA continues to depend upon the Claim Fraud Filter as a basis for denying or closing unauthorized transaction claims, or as a basis for freezing any Class Member's account. (*Id.* ¶ 61.) This practice results in the closing of tens of thousands of Class Member accounts each month, depriving Class Members of access to critical unemployment and other public benefits. (*Id.* ¶ 62.) Class Members also continue to experience unauthorized transactions on their debit cards. (*Id.* ¶ 63.)

5.    Consumer Finance Protection Bureau ("CFPB") and the Office of Comptroller of the Currency ("OCC") Response

On June 14, 2022, the CFPB and the OCC collectively fined BOA $225 million for its handling of state unemployment benefits at the height of the Pandemic. (*Id.* ¶ 68.) The CFPB found BOA engaged in unfair and abusive acts and practices, because they replaced a reasonable investigation process with a faulty Claim Fraud Filter, lowered the bar for freezing unemployment insurance benefits, and improperly retroactively deprive account members of access to their accounts that were investigated and paid. (*Id.* ¶¶ 69–72.) Further, the CFPB found BOA failed to issue provisional credits to account holders within the legally-required ten business days, failed to complete investigations on accounts within forty-five days, and ultimately failed to timely investigate account holders' notices of error. (*Id.* ¶¶ 74–77.) BOA's erroneous use of the Claim Fraud Filter occurred while handling approximately 188,000 notices of error by affected customers. (*Id.* ¶ 78.) The CFPB found BOA's actions violated Sections 908 and 909 of the EFTA, and Section 1005.11 of Regulation E. (*Id.*) The OCC similarly found BOA failed to give access of unemployment funds to account holders, leaving them without any effective way of remedying the

situation. (*Id.* ¶ 73.)

6. Class Representative Experiences

a. Plaintiff Cassandra Valerie Beaman

Beaman lost her job due to the Pandemic in March of 2020. (*Id.* ¶ 79.) Beaman applied for, and began receiving, unemployment benefits through the State of New Jersey. (*Id.*) In May 2021, Beaman's debit card was declined while attempting to complete a transaction. (*Id.* ¶ 80.) Beaman immediately called BOA to inquire as to why the transaction did not go through. (*Id.*) A representative of BOA verified Beaman's identity and reviewed her account. (*Id.*) BOA told Beaman that her card was declined because there were apparent fraudulent transactions on her account. (*Id.*) After the telephone call with BOA, Beaman logged in to her account online and reviewed her May 2021 statement. (*Id.* ¶ 81.) Beaman discovered the fraudulent transactions included purchases totaling approximately $300.00 from the month of May 2021. (*Id.*) Beaman also discovered that a restriction was placed on her account disabling her from accessing the funds in her account. (*Id.* ¶ 91.)

On May 23, 2021, Beaman called BOA and spoke with an account representative. (*Id.* ¶ 83.) During the call, Beaman indicated her belief that the May 2021 statement contained errors of $300.00 in unauthorized transactions, set forth her reasoning for her belief that errors had occurred, reported her account restriction, requested additional information as to why a restriction was placed, and requested that the money be returned to her account and that BOA investigate as to the source and authorization of the transactions. (*Id.* ¶¶ 83–84, 91.) BOA was able to locate the fraudulent transactions, but did not provide provisional or permanent credit. (*Id.* ¶¶ 85–86.) Despite Beaman identifying and reporting the unauthorized transactions to BOA within 60 days, BOA did not investigate, correct the identified errors, provisionally recredit, nor credit interest to

Beaman's account. (*Id.* ¶¶ 87–89.) BOA also failed to provide any information as to why a restriction was placed on Beaman's account. (*Id.* ¶ 91.) Since May 2021, Beaman has called BOA over twenty times. (*Id.* ¶ 92.) During each telephone call, BOA told her she needed to re-verify her identity to remove any restriction on her account; however, even when she re-verified her identity, the restrictions remained. (*Id.*) BOA has still failed to grant her access to her account. (*Id.*) Because of Beaman's inability to access her BOA account, she missed a $200.00 rent payment, a $60.00 phone bill, and struggled to afford food, gas, and clothing. (*Id.* ¶ 93.)

b.       Plaintiff Stefan Brooks

In 2021, Brooks's BOA debit card was declined when shopping at a grocery store, despite having sufficient funds to cover the purchases on his account. (*Id.* ¶ 94.) Brooks's account had been frozen without prior notice. (*Id.*) When he called BOA to unfreeze the account, BOA asked him to verify his identity. (*Id.* ¶ 95.) After spending thirty minutes on the phone with BOA, Brooks's account was unfrozen. (*Id.*) Shortly thereafter, Brooks's account was frozen without notice. (*Id.* ¶ 96.) Again, Brooks spent thirty minutes on the phone with BOA to unfreeze his account. (*Id.* ¶¶ 96–97.) After Brooks's account was unfrozen, BOA froze the account for a third time. (*Id.* ¶ 98.) Brooks then called BOA's fraud department, which re-directed him to the LWD. (*Id.*) LWD informed Brooks the funds had been released to BOA, and he should have access to them. (*Id.* ¶ 99.) Brooks called BOA to request access to the funds, but he was referred back to LWD. (*Id.* ¶ 100.) Brooks was never given any notice of any changes of access to his account. (*Id.* ¶ 101.)

c.       Plaintiff Laura Roselli

In 2021, Roselli was approved to receive unemployment benefits from the State of New Jersey that would be distributed by BOA. (*Id.* ¶ 102.) In October 2021, BOA transmitted online

statements to her which showed unauthorized electronic fund transfers which occurred within the prior 60 days. (*Id.* ¶ 103.) The online statements displayed the following unauthorized electronic transfers: a) an unauthorized $7,000.00 withdrawal on October 26, 2021; b) an unauthorized $7,000.00 withdrawal on October 31, 2021; and c) an unauthorized $2,800.00 withdrawal on October 31, 2021.[3] (*Id.*)

Roselli reviewed her online statement on October 26, 2021 and discovered the unauthorized $7,000.00 electronic fund transfer from that date. (*Id.* ¶¶ 104–05.) On the same date, Roselli called BOA and spoke with a representative to relay her belief that the online statement contained an error of $7,000.00. (*Id.* ¶¶ 104–08.) During the call, BOA verified her identity, account, and the unauthorized transactions. (*Id.* ¶ 106.) BOA located the error and noted her account. (*Id.* ¶ 109.) Roselli again reviewed her online statement on October 31, 2021 and discovered two more errors dated October 31, 2021, an unauthorized $7,000.00 electronic fund transfer and an unauthorized $2,800.00 electronic fund transfer both. (*Id.* ¶¶ 112–14.) Roselli called BOA on the same day and spoke with a representative. (*Id.* ¶ 115.) During the call, BOA again verified her identity, account, and the unauthorized transactions. (*Id.*) Roselli explained that she did not recognize the transactions. (*Id.* ¶ 116.) She also noted that the unauthorized transfers were to a Sutton Bank account to which she had no connection. (*Id.*) BOA again located the errors and noted her account. (*Id.*)

BOA did not investigate, correct the identified errors, mail an explanation, provisionally credit, or permanently credit Roselli's account. (*Id.* ¶¶ 110–11, 117–21.) Because of the

---

[3] The Court notes there are some inconsistencies in the TAC. (*See id.* ¶¶ 103–14.) Plaintiffs state there were three unauthorized electronic fund transfers from October 26, 2023 and October 31, 2023. (*Id.* ¶ 103.) Thereafter Plaintiffs state these electronic fund transfers were from October 26, 2021 and October 31, 2021. (*Id.* ¶¶ 104–14.) As the FAC alleged these transactions occurred in 2021, the Court assumes this was a typographical error by Plaintiffs. (*See* ECF No. 36 ¶¶ 92–94.)

unauthorized transactions, Roselli was unable to put a deposit on an apartment and did not have the funds to pay for rent, food, gas, phone, and utility bills. (*Id.* ¶ 122.)

**B.    Procedural History**

Plaintiff Cassandra Beaman initiated this Class Action on December 17, 2021, individually and on behalf of all others similarly situated. (ECF No. 1.) BOA moved to dismiss (ECF No. 6), but the motion was terminated pending the parties' agreement on an acceptable briefing schedule (ECF No. 15). BOA's Motion to dismiss, Beaman's Opposition, and BOA's Reply were re-filed on July 19, 2022. (ECF Nos. 20–22.) On October 18, 2022, the parties stipulated to permit Beaman to amend the Complaint and to extend BOA's time to answer, move or otherwise respond. (ECF No. 35.)

On October 19, 2022, Plaintiffs filed the First Amended Complaint (the "FAC"). (ECF No. 36.) The FAC asserted six claims for relief: violations of the EFTA and Regulation E (Count I), negligence and negligence *per se* (Count II), negligent hiring, supervision, and retention (Count III), breach of contract (Count IV), breach of implied contract (Count V), and breach of implied covenant of good faith and fair dealing (Count VI). (*Id.*) BOA moved to dismiss the FAC on December 9, 2022. (ECF No. 37.) Plaintiffs filed an Opposition on January 13, 2023. (ECF No. 38.) BOA filed a Reply on February 3, 2023. (ECF No. 40.) Thereafter, BOA filed a Notice of Supplemental Authority on March 29, 2023 in further support of its motion. (ECF No. 41.) Plaintiffs filed a letter in reply on April 5, 2023. (ECF No. 42.) On June 3, 2023, Plaintiffs similarly filed a letter with supplemental authority for the Court's consideration. (ECF No. 43.)

On July 27, 2023, the Court issued an Opinion and Order granting BOA's motion to dismiss the FAC. (ECF Nos. 44, 45.) In the July 27, 2023 Opinion, the Court found Plaintiffs had failed to state a claim under the EFTA and Regulation E. (ECF No. 44 at 15–24.) Additionally, the Court

held Plaintiffs had failed to allege any contract related claims as well as claims for negligence, negligence *per se*, and negligent, hiring, supervision, and retention. (*Id.* at 24–40.) The FAC was dismissed without prejudice, and Plaintiffs were permitted to file a Second Amended Complaint (the "SAC") to cure the deficiencies addressed in the Opinion. (*Id.* at 40.)

On August 17, 2023, Plaintiffs filed the SAC. (ECF No. 46.) The parties stipulated to a briefing schedule for BOA's anticipated motion to dismiss. (ECF Nos. 47, 48.) On September 26, 2023, Plaintiffs filed a motion for leave to amend the SAC. (ECF Nos. 49, 50.) On September 27, 2023, Plaintiffs' motion for leave to amend was granted. (ECF No. 51.)

Thereafter, Plaintiffs filed the TAC on September 28, 2023. (ECF No. 52.) The TAC asserts six claims for relief: violations of the EFTA and Regulation E (Count I), negligence (Count II), breach of contract (Count III), breach of fiduciary duty (Count IV), violations of due process under the 14th Amendment (Count V), and unjust enrichment and money had and received (Count VI).[4] (*Id.*) BOA moved to dismiss the TAC on October 27, 2023. (ECF No. 55.) Plaintiffs filed an Opposition on December 11, 2023. (ECF No. 56.) BOA filed a Reply on January 12, 2024. (ECF No. 57.)

### C.    Class Action Allegations

Plaintiffs Beaman, Brooks, and Roselli seek to bring this lawsuit individually and as a class pursuant to Federal Rule of Civil Procedure 23, and they also seek declaratory and injunctive relief and damages on behalf of a class defined as:

> All persons who were [BOA] LWD Debit Cardholders at any time between January 1, 2020 and the present ("Class Period"), and whose eligibility for benefits LWD has not revoked for failure to establish valid identity.

---

[4] This was the first instance in which Plaintiffs raised claims for breach of fiduciary duty, violations of due process, and unjust enrichment and money had and received.

(ECF No. 52 ¶ 123.) Plaintiffs further seek declaratory and injunctive relief, restitution, disgorgement, and statutory and actual damages on behalf of the following subclasses:

> **Claim Denial Subclass:** All Class Members who, during the Class Period, gave [BOA] notice of a claim that an unauthorized transaction had occurred on their Account ("Claim") and whose Claim [BOA] closed or denied based on application of the Claim Fraud Filter.

> **Untimely Investigation Subclass:** All Class Members who, during the Class Period, received provisional credit in connection with their claim for an unauthorized transaction that [BOA] rescinded more than 45 days after [BOA] received notice of the claim.

> **Credit Rescission Subclass:** All Class Members who, during the Class Period, received provisional or permanent credit from [BOA] in connection with their Claim, which [BOA] rescinded more than 45 days after the Class Member gave notice of the Claim.

> **Account Freeze Subclass:** All Class Members whose LWD Debit Card Account [BOA] froze during the Class Period based on application of the Claim Fraud Filter and later unfroze or later converted from frozen to blocked status and then unblocked.

> **Account Block Subclass:** All Class Members whose LWD Debit Card Account [BOA] blocked during the Class Period based on application of the Claim Fraud Filter and later unblocked.

> **Security Breach Subclass:** All Class Members whose Card, Account, or other personal information in the possession of [BOA] or its agents was, during the Class Period, accessed or taken by a third party without the Class Member's consent.

> **EMV Chip Subclass:** All Class Members whose LWD Debit Card, during the Class Period, did not include an EMV chip and whose Card, Account, or other personal information was accessed or taken from the Card by a third party without the Class Member's consent.

> **Lack of Notice Subclass:** All Class Members who experienced decreased access, and/or change in rights to make EFT on their consumer accounts without receiving written notice twenty-one-days prior to the effective date of any change from [BOA].

(*Id.* ¶ 124.) Plaintiffs allege the action can be maintained as a class action against BOA pursuant

to the provisions of Rule 23. (*Id.* ¶ 128.) Plaintiffs allege the following claims against BOA: (1) violations of the EFTA, 15 U.S.C. §§ 1693, *et seq.* and Regulation E of the EFTA, 12 C.F.R. §§ 1005.1-1005.20; (2) negligence; (3) breach of contract; (4) breach of fiduciary duty; (5) violations of due process under the 14th Amendment, 42 U.S.C. § 1983; and (6) unjust enrichment and money had and received. (*Id.* ¶¶ 129–91.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This

"plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss

[to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.  DECISION

BOA argues Plaintiffs have failed to: state a claim under the EFTA and Regulation E; assert actionable claims for breach of contract, breach of fiduciary duty, violations of due process under the 14th Amendment; and allege claims for negligence as well as unjust enrichment and money had and received. (ECF No. 55-1 at 6–32.) BOA submits the TAC should be dismissed with prejudice because Plaintiffs did not attempt to revive or replead some of the claims that were dismissed without prejudice in the July 27, 2023 Opinion, have failed to cure the defects of the remaining claims that were previously addressed by the Court, have failed to sufficiently allege their new causes of actions, and have been given three opportunities to amend the complaint. (*Id.* at 1, 4 n.1, 32.) Plaintiffs counter that they have adequately pled each of the causes of action. (ECF No. 56.) The Court addresses each count of the TAC in turn.

### A.  EFTA and Regulation E (Count I)

#### 1.  EFTA, 15 U.S.C. § 1693f

The Court previously dismissed without prejudice each of the Class Representative's claims under 15 U.S.C. § 1693f for failure to sufficiently allege whether each Class Representative provided notice to BOA within 60 days of the date on which a reported "unauthorized transfer" first appeared on their account statements. (ECF No. 44 at 15–22.) The Court noted "BOA's

arguments relating to the substantive sufficiency of the allegations can be re-raised, if applicable, in a motion to dismiss Plaintiffs' amended pleading." (*Id.* at 22 n.2.) Count I of the TAC alleges BOA violated 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 by failing to provisionally credit Plaintiffs and the class members' accounts. (ECF No. 52 ¶¶ 129–38.)

BOA now raises multiple argument as to why Plaintiffs' claims under 15 U.S.C. § 1693f should be dismissed. (*See* ECF No. 55-1 at 7–13; ECF No. 57 at 1–5.) In opposition, Plaintiffs assert that they have properly alleged facts sufficient to support their claim for violations of the EFTA and Regulation E. (ECF No. 56 at 4–10.)

a.  Beaman and Brooks Have Not Sufficiently Alleged a Qualifying Error Under 15 U.S.C. § 1693f(f)[6]

BOA submits Plaintiffs do not allege that Brooks experienced or reported any fraudulent, unauthorized transactions; instead, Plaintiffs only allege a "change of access to his account," which is not a qualifying error under Section 1693f. (ECF No. 55-1 at 7.) In opposition, Plaintiffs contend Beaman and Brooks sufficiently allege qualifying errors because they requested additional information regarding the freezes or other restrictions on their accounts.[5] (ECF No. 56 at 6–8.) In reply, BOA counters Plaintiffs' argument that Beaman and Brooks have sufficiently alleged a qualifying error by requesting additional information.[6] (ECF No. 57 at 1–3.) BOA submits dismissal is warranted because Plaintiffs, in opposition, assert for the first time that Brooks and

---

[5] Plaintiffs also argue Beaman and Roselli have adequately alleged that they timely identified, reported, and sought additional information regarding "an unauthorized electronic fund transfer." (ECF No. 56 at 8–9.) It appears this argument is in opposition to BOA's argument that *Brooks* has not properly pled a qualifying error.

[6] BOA initially moved for dismissal of Brooks's claim for failure to allege a qualifying error (ECF No. 55-1 at 7); in response to Plaintiffs' argument that Beaman and Brooks adequately alleged a qualifying error, BOA also asserted, in reply, that Beaman's claim should be dismissed "to the extent it was premised on an account freeze" (ECF No. 57 at 3).

Beaman have alleged a qualifying error consisting of a request for information under 12 C.F.R. § 1005.11(a)(1)(vii). (*Id.* at 1–2.)

The EFTA and its implementing regulations, including Regulation E, "impose, in certain situations, liability on banks for unauthorized electronic fund transfers . . . drawn against their customers' accounts." *Marquess v. Pa. State Emps. Credit Union*, 427 F. App'x 188, 188–89 (3d Cir. 2011) (citing 15 U.S.C. § 1693, *et seq.*; 12 C.F.R. § 205.6, *et seq.*). The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," especially regarding individual consumer rights. *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 77 (D.N.J. 2019) (citations omitted). Generally, the EFTA provides a private cause of action to the customer seeking damages for the financial institutions' unauthorized electronic transfer of funds from the customer's account. *Id.*

Specifically, Section 1693f(a)(3) requires financial institutions to "investigate [an] alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days," if the customer provides notice of the purported error within sixty days of the financial institution having transmitted to the customer a periodic statement containing the error. 15 U.S.C. § 1693f(a)(3); *see also* 12 C.F.R. § 205.6(b)(3) ("A consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60 days of the financial institution's transmittal of the statement to avoid liability for subsequent transfers."). The EFTA also mandates specific steps the financial institution must take depending on the results of an investigation. 15 U.S.C. § 1693f(b)–(d). The EFTA defines seven instances of "error" which require the financial institution to undertake certain procedures for resolution, including "an unauthorized electronic fund transfer" and "a consumer's request for additional information or clarification concerning an electronic fund transfer or any [required]

documentation." 15 U.S.C. § 1693f(f)(1)–(7); *see also* 12 C.F.R. § 1005.11(a)(1)(vii); 12 C.F.R. § 1005, Supp. I at 11(a) (Official Interpretation of § 1005.11(a)) ("A request for documentation or other information must be treated as an error unless it is clear that the consumer is requesting a duplicate copy for tax or other record-keeping purposes.").

An individual plaintiff can sufficiently allege a qualifying error when he or she "identified a fraudulent or unauthorized transaction or withdrawal" and then reported the fraud to the defendant financial institution. *See In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 909 (S.D. Cal. 2023); *see also Ali v. USAA Fed. Sav. Banks*, Civ. A. No. 16-00420, 2016 WL 5464602, at *4 (D. Ariz. Sept. 29, 2016) (noting "Defendant's error can potentially exist under [Section] 1693f(f)6 . . . simply because Plaintiff requested additional information and documentation and allegedly did not receive that documentation").

Count I clearly alleges a theory of recovery based on the fact that an unauthorized transaction is an "error" under Regulation E. (*See* ECF No. 52 ¶ 131 ("Plaintiffs and Class Members provided notice to Bank of America within 60 days after Bank of America sent a period statement reflecting an unauthorized transaction (which is an "error" under Regulation E) consistent with 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11.").) The Court will not consider Plaintiffs' argument that the Class Representatives have sufficiently alleged a qualifying error under Section 1693f(f)6. *See In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig.*, Civ. A. No. 08-0663, 2008 WL 5451024, at *3 n.3 (D.N.J. Dec. 31, 2008) ("Plaintiffs' new argument is an improper response to Defendant's motion to dismiss, and will not be considered by this Court. . . . Plaintiffs raises [sic] it for the first time in their opposition brief."); *see also Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in

original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Even assuming *arguendo* this theory had been properly pled, Section 1693f(f)6 provides that a qualifying error includes "a consumer's request for additional information or clarification *concerning an electronic fund transfer or any [required] documentation.*" 15 U.S.C. § 1693f(f)6 (emphasis added). Beaman and Brooks have failed to allege a qualifying error under Section 1693f(f)6 because they have not alleged that they sought information concerning an electronic fund transfer or any required documentation. *See Hardin v. Bank of Am., N.A.*, Civ. A. No. 22-10023, 2022 WL 3568568, at *3 (E.D. Mich. Aug. 18, 2022) ("[R]equests for additional information or clarification apply only for requests 'concerning an electronic fund transfer.'") (quoting 12 C.F.R. § 1005.11(a)(1)(vii)). Rather, Beaman alleges that she asked BOA why her account was restricted (ECF No. 52 ¶¶ 91, 92), and Brooks alleges that he called BOA to verify his identity and request access to his funds (*id.* ¶¶ 95, 96). Further, Brooks does not even allege that he experienced an unauthorized transaction. (*See* ECF No. 52 ¶¶ 94–101.) Instead, Brooks merely alleges "a change of access to his account." (*Id.* ¶ 101.) As Plaintiffs concede that "courts have recognized that an account freeze or other restriction (such as an identity re-verification requirement) alone does not constitute a qualifying error" (ECF No. 56 at 6), Brooks and Beaman have not sufficiently alleged a qualifying error under Section 1693f(f)(6). *See Hardin*, 2022 WL 3568568, at *3 ("EFTA does not regulate account freezes; it regulates electronic fund transfers. . . . And the regulation does not define account freezes as an 'error' covered under the EFTA."); *see also Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 909 ("Neither EFTA nor Reg[ulation] E lists account freezes as a qualifying error.").

Accordingly, BOA's Motion to Dismiss Brooks's EFTA claim under 15 U.S.C. § 1693f for failure to allege a qualifying error is **GRANTED**. Brooks's EFTA claim is dismissed **without**

**prejudice**.[7]

b.    Plaintiffs Have Sufficiently Alleged Beaman Provided Notice

BOA argues Beaman has not pled facts establishing that she provided sufficient notice to BOA to trigger BOA's obligations under EFTA and Regulation E. (ECF No. 55-1 at 8–9.) In opposition, Plaintiffs assert all of the Class Representatives' allegations are sufficient to establish that they satisfied the notice requirements for reporting qualifying errors. (ECF No. 56 at 9–10.) Specific to Beaman, Plaintiffs submit "the TAC is replete with allegations specifying when [she] became aware of the qualifying event, and when and how that Plaintiff reported the event to [BOA]." (*Id*. at 9.) Plaintiffs argue Beaman has provided allegations which are more detailed than ones that have been deemed insufficient in cases from different districts. (*Id.* at 10.) In reply, BOA asserts Beaman has not alleged sufficient notice because she has not identified which transaction, or transactions, are at issue. (ECF No. 57 at 3.)

A customer's notice under Section 1693f must: (1) set forth the name and account number of the consumer, or set forth information to otherwise enable the institution to identify the customer; (2) indicate the customer's belief that the documentation or the customer's account contains an error, and the amount of the alleged error; and (3) set forth the reasons for the customer's belief that an error has occurred. 15 U.S.C. § 1693f(a). The customer must take "steps reasonably necessary to provide the institution with pertinent information" and must notify the institution in person, by telephone, or in writing. 12 C.F.R. § 205.6(b)(5). The financial institution's obligations under the EFTA are triggered once proper notice is given. *See* 15 U.S.C. § 1693f(a). However, "[t]he notice of error is effective even if it does not contain the customer's

---

[7] Beaman's claim under the EFTA is also dismissed without prejudice to the extent it is premised on an account restriction and a request for additional information under Section 1693f(f)(6).

account number, so long as the financial institution is able to identify the account in question." CFPB Official Interpretation of 12 C.F.R § 1005.11(b)(1), Supp. I at 11(b)(1).

"[T]he statute's notice requirement is more demanding: it requires Plaintiff[s] to provide notice within sixty days of the date on which the unauthorized transfer first appeared on the account statement." *Perry*, 423 F. Supp. 3d at 77. In other words, in order to trigger BOA's error resolution requirements and to avoid liability for subsequent transfers, the EFTA and Regulation E require consumers to report any unauthorized electronic fund transfers within the sixty-day window, which begins on the date the financial institution sends the periodic statement containing the problematic charge. *See* 15 U.S.C. § 1693f(a); 12 C.F.R. § 205.6(b)(3).

"While proof of Plaintiff[s'] untimely notice may limit [BOA's] liability . . . , it does not necessarily complete the EFTA analysis." *See Perry*, 423 F. Supp. 3d at 78. If notice is untimely, the EFTA places the burden of proof on the financial institution to show that Plaintiffs are liable for the allegedly unauthorized transfers because timely notice would have prevented the subsequent unauthorized transfers. *See* 15 U.S.C. § 1693g(a). Therefore, BOA is not responsible for reimbursing "losses the financial institution establishes would not have occurred but for the failure of the consumer to report [the unauthorized transfers] within sixty days of transmittal of the statement." *Id.* In other words, "the EFTA may still provide recovery for consumers who fail to timely report unauthorized transfers," but the failure to provide timely notice makes the consumer liable for any transfers that could have been prevented had the notice been timely. *Exarhos v. JPMorgan Chase Bank, N.A.*, Civ. A. No. 20-7754, 2021 WL 3047152, at *2 (N.D. Ill. July 20, 2021) (citing *Perry*, 423 F. Supp. 3d at 78; *Cifaldo v. BNY Melon Inv. Serv. Tr. Co.*, Civ. A. No. 17-842, 2017 WL 6513342, at *4 (D. Nev. Dec. 19, 2017)).

Plaintiffs' recovery is dependent upon when notice of the alleged fraud was provided. *See*

12 C.F.R. § 205.6(b)(3) ("[T]he consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60 days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period."). For example, in *Exarhos*, the defendant financial institution, Chase, issued a statement to the plaintiffs, the Exarhoses, containing the unauthorized transfer on October 16, 2019. *Exarhos*, 2021 WL 3047152, at *3. The EFTA required the Exarhoses to report the transfer within sixty days, by December 15, 2019, but the transfer was not reported until July 24, 2020. *Id.* Other than the initial unauthorized transfer appearing in the October 2019 statement, the remaining fraudulent transfers at issue in the case occurred between December 15, 2019 and July 24, 2020. *Id.* Therefore, the Court explained "if Chase establishes that the remainder of the unauthorized transfers would not have occurred if the Exarhoses timely reported the October 2019 transfer, the Exarhoses would be liable for the transfers." *Id.* (citations omitted). However, the Court held that was a factual issue not appropriate for the pleading stage. *Id.* at *4.

The Court finds Plaintiffs have sufficiently alleged that Beaman provided notice to BOA. (*See* ECF No. 52 ¶¶ 79–93.) Specifically, the TAC contains the following facts relating to the timing of Beaman's report:

> 80. In May 2021, [Beaman's] card was declined while attempting to complete a transaction. Immediately after discovering that Bank of America had declined the transaction and likely placed a restriction on the LWD account, which restricted use, Beaman immediately called Bank of America to inquire as to why the transaction did not go through. She knew there were funds on the card and was perplexed as to why the transaction was denied. Bank of America had no difficulty verifying Beaman's identity or accessing and reviewing the account in question. The bank told her over the phone that her card was declined because access to her funds was restricted due to what it believed where fraudulent transactions.

81. As soon as Beaman completed this telephone call with the Bank of America representative, she logged online to her account and reviewed her May 2021 statements. **She discovered that there was a total of $300 in unauthorized transactions, which occurred prior in that same month of May 2021.**

82. Within a day after discovering the unauthorized transactions on her May 2021 statement, **which occurred within 60-days,** Beaman called Bank of America and was able to reach an account representative. Bank of America had no trouble verifying Beaman's identity, the account in question, or the unauthorized transactions.

83. During the call on May 23, 2021, **she indicated her belief that the May 2021 online statement of account contained errors of $300 in unauthorized transactions**. On information and belief Beaman conveyed the transaction details, the amount and corresponding dates, **which transactions occurred within the preceding 60-days.**

84. During the call on May 23, 2023, she set forth the reasons for her belief that errors had occurred, specifically informing the Bank of American representative that she did not make those charges and did not authorize those transactions. She explained that she did not recognize the transactions and had no idea what they were or who made them. She requested that Bank of America conduct an investigation as to the source and authorization of the transactions and requested the money be returned to her account.

85. Bank of America was able to locate the identified transactions reported as errors and noted the account.

(ECF No. 52 ¶¶ 80–85) (emphasis added). Then, Plaintiffs generally allege, "Plaintiffs and Class Members provided notice to [BOA] within 60 days after [BOA] sent a period statement reflecting an unauthorized transaction . . . consistent with [the EFTA and Regulation E]." (*Id.* ¶ 131.)

Plaintiffs provide allegations about when the fraudulent charges first appeared on Beaman's account statements by alleging the unauthorized transactions occurred in the "month of May 2021," (*id.* ¶ 81), which is an allegation that is "more than [a] conclusion[]." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Plaintiffs allege facts relating to when Beaman discovered the fraud on her account in March 2021, and state

when those fraudulent charges appeared on her online statement. Accordingly, the Court finds Plaintiffs have plausibly alleged that Beaman provided timely notice. *Cf. Scheffler v. TD Bank, N.A.*, Civ. A. No. 18-6688, 2019 WL 192651, at *5 (D.N.J. Jan. 15, 2019) (noting the plaintiff failed to "allege the dates on which she received documentation like an account statement that might show electronic transfers from her checking and savings accounts," in violation of 15 U.S.C. § 1693f(a), but dismissing for violation of the statute of limitations); *Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 906 ("A complaint that doesn't allege that a consumer provided timely notice doesn't state a claim under the EFTA. . . . At the pleading stage, a complaint must state sufficient facts, construed in the light most favorable to the plaintiff, to plausibly allege timely notice.").

      c.      <u>Beaman and Roselli Have Sufficiently Alleged a Violation of EFTA and Regulation E</u>

BOA contends Plaintiffs have not adequately pled violations of EFTA and Regulation E because Plaintiffs have engaged in improper "shotgun pleading." (ECF No. 55-1 at 10.) BOA also asserts the TAC lacks sufficient facts related to the alleged violations of EFTA. (ECF No. 55-1 at 10–12.) BOA submits Plaintiffs do not allege facts which establish that BOA's decisions—to not reimburse Roselli and Beaman and to not provide provisional credit to them—were made without an adequate investigation. (*Id.* at 10–11.) Next, BOA argues Plaintiffs have not alleged facts to support an entitlement to interest under EFTA and Regulation E. (*Id.* at 12.) Finally, BOA contends Plaintiffs claims fail because EFTA and Regulation E do not prohibit or regulate account freezes. (*Id.*)

In opposition, Plaintiffs argue they have adequately alleged a violation of 15 U.S.C. § 1693f based on BOA's conduct following the reporting of a qualifying error. (ECF No. 56 at 11–12.) Plaintiffs submit the TAC provides sufficient facts "as to why [BOA]'s investigation in the

case of each amending Plaintiff was not in good faith, took longer than 10 days, and/or reached an unreasonable conclusion." (*Id.* at 11.) Plaintiffs assert they have also alleged "a plausible claim that [BOA] did not provide the results of its investigation of various Plaintiffs' claims and instead relied on boilerplate or automatic account restrictions and closings." (*Id.*)

In reply, BOA submits "Plaintiffs make no attempt to respond to [BOA]'s argument that their shotgun pleading approach was improper. . . . Moreover, the Opposition only addresses two of the alleged EFTA violations: the alleged failure (1) to conduct a reasonable investigation and (2) to provide a written explanation of results." (ECF No. 57 at 4.)

Rule 8(a)(2) requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has held that a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted). Here, Count I of the TAC identifies eleven policies and/or practices in which BOA allegedly violated the EFTA and Regulation E. (ECF No. 52 ¶ 132.) Plaintiffs' claims arise from separate transactions, yet the Class Representatives' claims are grouped together without specifying which of the asserted eleven policies and/or practices apply to which Class Representative. (*See id.*) In a different context, the Third Circuit has previously criticized "the all too common shotgun pleading approach." *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988). However, "the Third Circuit has been silent on the issue since. As a result, district courts within this Circuit look to well-developed Eleventh Circuit case law on shotgun pleadings." *Patrick v. Equifax Info. Servs.*, LLC, Civ. A. No. 23-4092, 2024 WL 2077036, at *3 (D.N.J. May 9, 2024). Because Plaintiffs did not address BOA's argument that their "shotgun" pleading was improper (*see* ECF No. 56), the Court will not engage in a detailed

analysis of this issue as BOA raises this argument in passing, in a single paragraph (ECF No. 55-1 at 1). *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").

Plaintiffs only address the sufficiency of two of the policies and/or practices which allegedly violated the EFTA and Regulation E, BOA's failure to: (1) conduct a reasonable investigation; and (2) provide a written explanation of results. (ECF No. 56 at 11–12.) Because Plaintiffs have not responded to BOA's substantive arguments (ECF No. 55-1 at 11–12), the Court finds Plaintiffs have waived their claims for violations of the EFTA and Regulation E to the extent they are premised on the other policies and/or practices. *See Jimenez v. T.D. Bank, N.A.*, Civ. A. No. 20-07699, 2021 WL 4398754, at *14 (D.N.J. Sept. 27, 2021) ("The failure to respond to a substantive argument to dismiss a [claim], when a party otherwise files opposition, results in a waiver of that [claim].") (quoting *Griglak v. CTX Mortg. Co., LLC*, Civ. A. No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010)).

As to Plaintiffs' assertion that BOA failed to conduct a reasonable investigation, the Court finds Plaintiffs have failed to adequately allege a violation of Section 1693. Plaintiffs have not alleged any facts which establish that BOA did not conduct a reasonable investigation. *See Chen v. Bank of Am., N.A.*, Civ. A. No. 19-6941, 2019 WL 9633650, at *7–8 (C.D. Cal. Oct. 29, 2019) (dismissing claim where plaintiff "[did] not allege details establishing any bad faith on [BOA]'s part"). Plaintiffs have failed to allege sufficient facts as to why the investigations were lacking. (*See* ECF No. 52 ¶¶ 86–87, 118.) Plaintiffs, instead, rely on allegations that are "on information and belief" and legal conclusions. *See Advanced Ordal Techs., L.L.C. v. Nutrex Rsch. Inc.*, Civ. A. No. 10-5303, 2011 WL 1080204, at *4 n.6 (D.N.J. March 21, 2011) ("Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little

hope of salvaging an otherwise defective complaint."); *Papasan*, 478 U.S. at 286 (holding a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

However, the Court finds Beaman and Roselli[8] have sufficiently alleged facts establishing that BOA engaged in a policy or practice of not providing a written explanation of results in violation of the EFTA and Regulation E. As noted above, Section 1693f(a)(3) requires financial institutions to "investigate [an] alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days," if the customer provides notice of the purported error within sixty days of the financial institution having transmitted to the customer a periodic statement containing the error. 15 U.S.C. § 1693f(a)(3). Beaman and Roselli allege their requests for provisional credits related to unauthorized transactions were denied without further explanation, and that BOA did not report or mail the results of its investigation. (*See* ECF No. 52 ¶¶ 86–92, 110¸ 117–119.) Beaman and Roselli have plausibly alleged that they "got a determination but not the results of such investigation." *Gale v. Hyde Park Bank*, 384 F.3d 451, 453 (7th Cir. 2004) (noting "all a complaint need do is narrate a claim for relief" and finding plaintiff had plausibly alleged a claim under Section 1693f based on similar allegations).

Accordingly, BOA's Motion to Dismiss Plaintiffs' claims under Section 1693f and Regulation E is **GRANTED IN PART** and **DENIED IN PART**.

2.     EFTA, 15 U.S.C. § 1693c

BOA argues Plaintiffs' Section 1693c claims fail because EFTA, Regulation E, and the Account Agreement permit BOA to freeze accounts. (ECF No. 55-1 at 13.) Plaintiffs concede "that

---

[8] As the Court has already dismissed Brooks's Section 1693f claim for failure to allege a qualifying error, the Court does not address whether he has sufficiently alleged a violation of the EFTA and Regulation E.

their allegations regarding 15 U.S.C. § 1693c cannot be amended at this time." (ECF No. 56 at 4.)

As noted in the July 27, 2023 Opinion (ECF No. 44 at 22–24), the EFTA requires financial institutions to disclose, in readily understandable language, the terms and conditions of electronic fund transfers on a consumer's account, at the time the consumer contracts for the service. 15 U.S.C. § 1693c(a). Under this Section, the financial institution is responsible for notifying a consumer "in writing at least twenty-one days prior to the effective date of any change in any term or condition of the consumer's account" if that change "would result in greater cost or liability for such consumer or decreased access to the consumer's account." 15 U.S.C. § 1693c(b). However, the financial institution may implement a change without prior notice "when such change is immediately necessary to maintain or restore the security of an electronic fund transfer system or a consumer's account." *Id.*

Plaintiffs' initial Account Agreement,[9] disclosed at the time they contracted with BOA for its services through the New Jersey Department of Labor and Workforce Development, permitted BOA to freeze Plaintiffs' accounts if the bank suspected irregular, unauthorized, or unlawful activities, pending an investigation. (ECF No. 37-2, Lustberg Dec., Ex 1 ("Account Agreement") § 2) ("If we suspect irregular, unauthorized, or unlawful activities may be involved with your Account, we may 'freeze' (or place a hold on) the balance pending an investigation of such suspected activities. If we freeze your Account, we will give you a notice required by law.") This

_____

[9] The Account Agreement was provided by BOA as an exhibit to an attorney certification in support of its Motion to Dismiss the FAC. The Court considered the document in its determination of BOA's Motion to Dismiss the FAC, absent objection, because the Court found the Account Agreement was integral to and was explicitly relied upon in Plaintiffs' FAC. *See In re Burlington Coat Factory*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."); *Scheffler*, 2019 WL 192651, at *2 (finding the Court could consider the parties' Account Agreement, which was not attached to the plaintiff's complaint because the agreement was integral to the plaintiff's claims).

provision was included in the Account Agreement, in readily understandable language, at the time of the contract. *See* 15 U.S.C. § 1693c(a). It was not subsequently added or changed, which would have triggered the twenty-one-day notice requirement of Section 1693c(b).

The freeze, or the alleged "change in their account," is not prohibited by Section 1693c(b). Instead, it is permitted by the parties' Account Agreement. (*See* Account Agreement § 2). Had BOA unilaterally changed the terms and conditions relating to the parties' rights and obligations under the provision governing the freezing of accounts, notice would have been required. *See* 15 U.S.C. § 1693c(b). Plaintiffs' allegations here only demonstrate BOA froze Plaintiffs' accounts upon suspected fraudulent activity, which is permissible under the original Account Agreement, and did not require prior notice because there was no change to the provision from the parties' initial agreement.[10] (*See* Account Agreement § 2). Because Plaintiffs fail to identify any change or alteration to the terms and conditions of their initial agreement with BOA, their claims under Section 1693c also fail.[11] In light of Plaintiffs' concession that their claims under Section 1693c cannot be amended at this time, BOA's motion to dismiss these claims are **GRANTED**. Plaintiffs' Section 1693c claims are **dismissed with prejudice**. *See In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 739 (D.N.J. 2016).

## B. Negligence (Count II)

BOA asserts Plaintiffs' negligence claims fail because: (1) Plaintiffs have failed to allege that BOA owed them a duty; (2) the claim is barred by the economic loss doctrine; (3) Plaintiffs have not sufficiently alleged causation; and (4) Plaintiffs cannot replead their deficient negligence

---

[10] To the extent Plaintiffs challenge that BOA was required under the Account Agreement to give "notice required by law," such an argument is not sustainable under the EFTA.

[11] Whether BOA provided sufficient notice under the Account Agreement, which requires notice be provided "by law," is a separate cause of action unrelated to this provision of the EFTA.

*per se* claim under the Gramm-Leach-Bliley Act (the "GLBA") as a negligence claim in order to avoid the FAC's pleading deficiencies. (ECF No. 55-1 at 14–17.)

In opposition, Plaintiffs argue BOA owed Plaintiffs an ordinary duty of care which was mandated by BOA's awareness of the likelihood of unauthorized transactions and BOA's capability to prevent unauthorized transactions. (ECF No. 56 at 13.) Plaintiffs assert BOA's failure to implement safeguards against the unauthorized transactions was the proximate cause of Plaintiffs' damages. (*Id.* at 14–15.) Next, Plaintiffs contend BOA's breach directly harmed Plaintiffs because Plaintiffs' damages "stem from [BOA]'s negligence in the secure storage, sharing, transmission or use of Cardholder Information." (*Id.* at 16.) Plaintiffs further argue their negligence claims are not barred by the economic loss doctrine because the duties that form the bases of the claims are distinct from the duties which arise under the Account Agreement. (*Id.* at 16–17.) Finally, Plaintiffs respond their "contentions that [BOA]'s non-compliance with GLBA, while not constituting negligence per se, buttress the argument that [BOA] failed to meet the ordinary standard of care." (*Id.* at 17.)

In reply, BOA asserts Plaintiffs' opposition is devoid of any case law that supports Plaintiffs' position that a bank owes a general duty of care that gives rise to the duties on which the negligence claim is premised. (ECF No. 57 at 5–6.) BOA reiterates the economic loss doctrine bars Plaintiffs' negligence claim. (*Id.* at 7.)

To sustain a cause of action for negligence, a plaintiff must establish: "(1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (citations omitted). A plaintiff must establish those four elements "by

some competent proof." *Id.* (citations omitted).[12]

1.  Plaintiffs' Negligence Claims Fail Under the Economic Loss Doctrine

Plaintiffs allege BOA had a duty to:

(a) safeguard their [unemployment insurance] and other LWD benefits;

(b) protect them from fraudulent access by unauthorized third parties to the funds paid into their LWD Debit Card Accounts, including by timely and accurately warning them of suspicious activity in those Accounts;

(c) protect them from unreasonable interference with their right and ability to continue to collect, receive, and access the LWD benefits to which they were entitled;

(d) ensure that [BOA's] customer service staffing levels, technology, and operations were capable of providing Plaintiffs and Class Members reasonably timely and effective customer service, including to address those customers' concerns about fraudulent or unauthorized transactions related to their LWD Debit Cards or Accounts;

(e) provide Plaintiffs and Class Members reasonable and adequate notice that their LWD Debit Cards and Accounts were at risk of being subject to unauthorized use or had been subjected to unauthorized use;

(f) timely and adequately investigate and resolve Plaintiffs' and Class Members' claims regarding unauthorized or fraudulent transactions; and

(g) extend to Plaintiffs and Class Members provisional credit in cases where [BOA] failed to timely resolve their fraud-related claims.

(ECF No. 52 ¶ 145.) Plaintiffs further allege BOA "owed these duties to Plaintiffs and Class

---

[12] In the July 27, 2023 Opinion, the Court dismissed Plaintiffs' negligence claims because "Plaintiffs failed to plead negligence based upon a theory of BOA's breach of the duty of ordinary care . . . [therefore] the Court cannot consider the argument raised for the first time in Plaintiffs' opposition." (ECF No. 44 at 37.) The Court also noted "it is unclear how, if at all, the duties alleged in Plaintiffs' FAC arise under an 'ordinary duty of care.'" (*Id.*)

Members because they were foreseeable and probable victims of inadequate security measures." (*Id.* ¶ 146; *see also id.* ¶¶ 148–50.)[13]

"The standard of care ordinarily imposed by negligence law is well established. To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others. What precautions are 'reasonable' depends upon the risk of harm involved and the practicability of preventing it." *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987) (citations omitted). "Courts consider several factors when determining whether a duty of care is owed: fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; and the ability to alter behavior to avoid injury to another." *G.A.-H. v. K.G.G.*, 210 A.3d 907, 915 (N.J. 2019) (citation omitted); *see also Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) ("The determination of the existence of a duty of care to avoid harm to another is ultimately governed by fairness and public policy.") (citing *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209 (N.J. 1996)). The New Jersey Supreme Court has explained that "[b]ecause [p]ublic policy must be determined in the context of contemporary circumstances and considerations, duty of care is a malleable concept that must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows." *G.A.-H.*, 210 A.3d at 915 (internal quotation marks and citation omitted). Notably, "the law of torts declines to impose a duty of care upon '[a]n actor whose conduct has not created a risk of physical or emotional harm to another.'" *Id.* (citing *Restatement (Third) of Torts* § 37 (Am. Law Inst. 2012)). Therefore, "when the duty at issue relates

---

[13] In their claim for breach of contract, Plaintiffs similarly allege BOA "breached its promises to Plaintiff Roselli and Class Members in its Cardholder Agreement by, among other things: (a) failing to timely and reasonably investigate and resolve their fraud claims; (b) failing to reimburse them for unauthorized transactions; (c) failing to provide them with provisional credit when the Bank's investigation in their fraud claims exceeds 10 business days; and (d) failing to limit their liability for unauthorized transactions." (*Id.* ¶ 163.)

to the risk of harm created by a third party, the plaintiff must prove that the defendant knew or had reason to know of the risk of harm in question." *Id.* (citation omitted).

However, the economic loss doctrine bars claims for negligence between parties to a contract. *SRC Const. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 800 (D.N.J. 2013). This doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Chen v. HD Dimension, Corp.*, Civ. A. No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)); *see also Atlas Acquisitions, LLC v. Porania, LLC*, Civ. A. No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract."). "[T]he economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted); *see Minn. Life Ins. Co. v. Cooke*, Civ. A. No. 20-14326, 2021 WL 5122070, at *22–23 (D.N.J. Nov. 4, 2021) (observing that "[t]he economic loss doctrine bars negligence claims when the party asserting the action has a contractual remedy," unless "the injured party would not otherwise have a remedy" or if the breaching party owes an independent duty imposed by law (citation omitted)).

The Court finds that the economic loss doctrine bars Plaintiffs' claims for negligence. Although Plaintiffs allege that BOA was aware of the foreseeable harm of unauthorized transactions and that BOA had the capability to prevent this foreseeable harm (ECF No. 52 ¶¶ 2–3, 145–46, 148–50), the Court finds that Plaintiffs have not sufficiently alleged that the contractual relationship between Plaintiffs and BOA implicated an independent, reasonable duty of care

irrespective of the duties under the Account Agreement.[14] The Court is "persuaded that this case is essentially a [] breach of contract case, and that [Plaintiffs] through [their] tort allegations, simply [are] seeking to enhance the benefit of the bargain [they] contracted for with [BOA]." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002).

## 2.    Plaintiffs' Negligence Claims Under the GLBA Also Fail

Plaintiffs further allege BOA's "misconduct concerning its failure to adequately protect Plaintiffs' and Class Members' data also violates the [GLBA]." (ECF No. 52 ¶ 153.) Plaintiffs allege BOA's "failure to comply with the [GLBA] constitutes negligence." (*Id.* ¶ 155.) Plaintiffs also identify how BOA's conduct violated which portion of the GLBA, and how that conduct caused their injuries. (*See id.* ¶¶ 154–57.) In the July 27, 2023 Opinion, the Court dismissed Plaintiffs' negligence *per se* claims predicated on violations of the GLBA. (ECF No. 44 at 37–38.) The Court found: (1) "Plaintiffs' allegations relating to violation of the GLBA are 'conclusory,' which cannot survive a motion to dismiss"; (2) "Plaintiffs fail to identify how BOA's conduct violated which portion of the GLBA, and how that conduct caused their injuries"; and (3) the GLBA does not invoke a common law standard of care. (*Id.*)

The Court holds that Plaintiffs' claims for negligence due to violations of the GLBA fail because the GLBA does not invoke a common law duty of care. *See Kelly v. Walker-Grassi*, No.

---

[14] Plaintiffs have not alleged nor argued why BOA's relationship to Plaintiffs, as the disburser of their unemployment insurance and other LWD benefits, implicates ideals of fairness and public policy such that this Court should find that BOA owed Plaintiffs a reasonable duty of care. *See Schneider's Dairy, Inc. v. Serv. Pers. & Emps. of Dairy Indus., Teamsters Local Union No. 205*, No. 13-01325, 2013 WL 6485367, at *2 (W.D. Pa. Dec. 10, 2013) ("[I]t is not the Court's job 'to research and construct legal arguments open to parties, especially when they are represented by counsel.'" (quoting *330 West Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000))). Additionally, Plaintiffs have not identified a case in which a court has held that a financial institution owed an independent and reasonable/ordinary duty of care imposed by law under similar circumstances as here. (*See* ECF No. 56.)

CPM-L-182-03, 2007 WL 162285, at *6 (N.J. Super. Ct. App. Div. Jan. 24, 2007); *see also Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 925; *Cf. Ortiz v. Adams*, Civ. A. No. 08-04509, 2018 WL 3410027, at *10 (D.N.J. July 13, 2018) ("Because neither of the other statutes referred to by Plaintiff incorporates the common law standards or invokes similar language, any violation of those statutes may be evidence of negligence, but would not constitute negligence per se."). Further, "it is clear from the language of the statute that Plaintiff cannot bring a private right of action under the GLBA." *Arce v. Bank of Am.*, Civ. A. No. 13-2776, 2013 WL 6054817, at *8 (D.N.J. Nov. 15, 2013). Indeed, Plaintiffs do not cite to any case which supports the argument that an alleged violation of the GLBA may serve as the basis for a negligence cause of action. (*See* ECF No. 56.)

Accordingly, BOA's Motion to Dismiss Plaintiffs' claims for negligence (Count II) is **GRANTED**.

### C. Breach of Contract (Count III)

BOA notes: "Plaintiffs have significantly narrowed their claim for breach of contract. Plaintiffs' sole remaining theory—raised only on behalf of plaintiff Roselli—is that [BOA] failed to timely and properly investigate and reimburse Roselli for her allegedly unauthorized transactions." (ECF No. 55-1 at 18.) BOA argues Plaintiffs' breach of contract claim fails because: (1) Roselli has been fully reimbursed for the allegedly fraudulent transactions therefore the Court should dismiss Roselli's claim under either Rule 12(b)(1) for mootness and a lack of subject matter jurisdiction or under Rule 12(b)(6) because she cannot allege damages; and (2) the TAC still fails to state a breach of contract claim based on the investigation or reimbursement of the alleged unauthorized transactions therefore dismissal is warranted pursuant to Rule 12(b)(6). (*Id.* at 18–21.)

In opposition, Plaintiffs assert Roselli's claim is not moot and she has adequately pled a breach of contract claim as she remains uncompensated therefore she can satisfy the element of damages. (ECF No. 56 at 18–19.) Plaintiffs contend BOA's reliance on an affidavit "contradicts the complaint, and a Rule 12(b)(1) analysis should not shift the burden of persuasion. Competing declarations constitute a factual challenge, inappropriate at this stage. [BOA]'s sole Rule 12(b)(6) challenge should not alter the burden of persuasion, maintaining that Roselli sufficiently alleged facts to overcome dismissal." (*Id.*) Plaintiffs also submit Section 11 of the Account Agreement "mandates timely investigation, unfulfilled by [BOA] in Roselli's case, violating the implied covenant of good faith." (*Id.* at 19.) Plaintiffs further argue Section 9 of the Account Agreement "promising 'zero liability,' is breached as unauthorized transactions persist without reimbursement." (*Id.*)

In reply, BOA submits a factual challenge, such as whether Roselli has been reimbursed, is appropriate at this stage. (ECF No. 57 at 8, 9 n.5.) As to Plaintiffs' claims for alleged breaches of Section 9 and 11 of the Account Agreement, BOA asserts these claims should be dismissed because the Court has previously held Plaintiffs failed to sufficiently allege this claim and Plaintiffs did not substantively oppose the argument in BOA's underlying brief. (*Id.* at 9.)

Under North Carolina law,[15] to state a claim for breach of contract, a plaintiff must allege "(1) existence of a valid contract and (2) breach of the terms of that contract." *MedShift, LLC v. Charles W. Morgan Pelle, LLC*, 584 F. Supp. 3d 112, 122 (W.D.N.C. 2022) (quoting *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. 2000)). Where a complaint alleges both of those elements, "it is error to dismiss a breach of contract claim under Rule 12(b)(6)." *Woolard v. Davenport*, 601 S.E.2d

---

[15] *See* Account Agreement § 18 ("The Agreement will be governed by the laws and regulations of the United States and, to the extent not so covered, by the laws and regulations of the State of North Carolina."). Neither party disputes the application of North Carolina law to this action.

319, 322 (N.C. 2004).

<h3 style="text-align:center">1.   Roselli's Claim for Breach of Contract is Moot</h3>

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). "In order to have subject matter jurisdiction, a District Court must be able to exercise either federal question jurisdiction or diversity jurisdiction." *Trinh v. Off. of Recs. Phila.*, 779 F. App'x 118, 119–20 (3d Cir. 2019) (citing 28 U.S.C. §§ 1331 & 1332). "[I]t is the plaintiff who bears the burden of proving that the federal court has jurisdiction." *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005) (citations omitted); *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual

allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (alteration in original) (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings' " and "[n]o presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (first alteration in original) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quoting *Mortensen*, 549 F.2d at 891).

A U.S. federal court can only adjudicate live cases and controversies. *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). Article III of the United States Constitution states, "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution." U.S. Const. art. III, § 2. The exercise of judicial power under Article III therefore requires "that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72–73 (2013) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)). "An action is rendered moot when 'an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit,' at any point during the litigation." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F. 3d 239, 247 (3d Cir. 2013) (quoting *Genesis*, 569 U.S. at 762).

Here, BOA provided a declaration from Shane Daniels, Senior Vice President, Business Executive Operations for Claims Administration which provides copies of the letters that BOA sent to Roselli reflecting that her account was credited $16,800.00 in total for the alleged unauthorized transactions on January 18, 2023 and August 28, 2023. (*See* ECF No. 55-3 (Decl. of

Shane Daniels) ¶ 3, Exs. A and B.) Plaintiffs do not dispute the authenticity or veracity of these letters. (*See* ECF No. 56.) Rather, Plaintiffs assert that a factual challenge is inappropriate at this stage. (*Id.* at 18–19.) The Court may properly consider the declaration and exhibits provided by BOA. *See Davis*, 824 F.3d at 346; *see also Cestonaro v. United States*, 211 F.3d 749, 752 (3d Cir. 2000) ("Because the government's challenge to the District Court's jurisdiction was a factual one under Fed. R. Civ. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings to decide factual matters relating to jurisdiction.").

The Account Agreement expressly limits BOA's contractual liability to the "face amount of any unauthorized card transaction," and provides that BOA is "not liable for any claims of special, indirect, or consequential damages." (Account Agreement § 9.) Therefore, the Court finds that Roselli's claim for breach of contract is rendered moot and she no longer has a personal stake in the outcome of a claim because she has been fully reimbursed for the unauthorized transactions as represented by the declaration and exhibits that BOA provided. *See Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 930 ("[A]ny Plaintiff that has been completely reimbursed can't recover contract damages, and can't state a claim for breach of contract.")

Accordingly, BOA's Motion to Dismiss Roselli's claim as moot pursuant to Rule 12(b)(1) is **GRANTED**. Roselli's claim is **DISMISSED WITH PREJUDICE**. *See id.*

2. <u>Plaintiffs Do Not Sufficiently Allege Breach of Contract Claims Premised on Inadequate Investigation and Reimbursement</u>

The Court also finds dismissal is warranted of Roselli and Class Members' claims for breach of contract premised on BOA's breach of the investigation and reimbursement provisions of the Account Agreement. Plaintiffs allege "Roselli and Class Members entered into a Cardholder Agreement with [BOA] that require[d] [BOA] to administer LWD benefits to them through

41

prepaid debit cards." (ECF No. 36 ¶ 160.) The parties do not dispute that the Account Agreement was a valid contract, only whether the Account Agreement was breached. Plaintiffs allege BOA breached Sections 9, 11 and other miscellaneous provisions of the Account Agreement. (*See id.* ¶¶ 161–63.) Section 9 covers BOA's "Zero Liability" Policy for Unauthorized Transactions which states:

> Federal law . . . may limit your liability for unauthorized transactions on your Account, but you may still be liable in some circumstances. Under the [BOA] "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to [certain enumerated] terms and conditions[.]"

(Account Agreement § 9.) Plaintiffs also refer to a Section entitled "WHEN YOU WILL HEAR FROM US" which states:

> We will determine whether an error occurred within 10 business days after we hear from you – and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or questions. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error . . . .

(*Id.* § 11.). As noted above, Plaintiffs allege BOA breached these provisions by:

> (a) failing to timely and reasonably investigate and resolve their fraud claims; (b) failing to reimburse them for unauthorized transactions; (c) failing to provide them with provisional credit when [BOA's] investigation . . . exceed[ed] 10 business days; and (d) failing to limit their liability for unauthorized transactions.

(ECF No. 52 ¶ 163.) Plaintiffs further allege that Roselli and Class Members were harmed by BOA's conduct and suffered actual damages, despite providing valuable consideration for the services they received. (*Id.* ¶ 164.)

As noted in the July 27, 2023 Opinion, the plaintiffs in *Hardin* sued BOA for several causes

of action relating to BOA's administration of unemployment benefits in Michigan during the COVID-19 Pandemic, including for breach of contract. 2022 WL 3568568, at *4. The Michigan District Court applied North Carolina state law, which governed the applicable agreement between BOA and the State. *Id.* at *4. The *Hardin* court dismissed some of the plaintiffs' cause of action for breach under this theory for separate reasons. First, the court held the plaintiffs "never alleged that they complied with the contract's requirements to provide notice that would trigger [BOA's] duties to investigate and reimburse a potential unauthorized transaction" including by failing to allege they provided the necessary information to verify their identity or whether they followed up in writing, as required by the agreement. *Id.* at *5. Further, the *Hardin* court explained, even if the plaintiffs provided the proper notice, "no allegations show that [BOA], after an investigation, violated its duty to reimburse[,]" in other words, whether BOA simply determined the transactions were not fraudulent. *Id.* Accordingly, the *Hardin* plaintiffs' breach of contract claims related to the unauthorized transactions were dismissed. *Id.*

Here, Roselli and the Class Members' claims for breach of BOA's investigation and reimbursement obligations fail for the latter reason. Section 9 of the Account Agreement only applies to claims that are unauthorized, which is defined as a transaction "initiated by someone other than you (the cardholder) without your actual or apparent authority, and you receive no benefit from the transaction." (Account Agreement § 9.) It is in BOA's sole discretion whether the "facts and circumstances . . . reasonably support a claim of unauthorized use." (*Id.*) If the transaction is not found to be "unauthorized," Section 9 of the Account Agreement detailing "[BOA's] 'Zero Liability' Policy for Unauthorized Transactions" does not apply. Section 11 similarly provides BOA with great flexibility in investigating a cardholder's allegation of error, again, allowing BOA to "determine whether an error occurred" before its responsibilities under

the provision are triggered. (*Id.* § 11.)

Plaintiffs' allegations in the TAC do not allege how BOA unreasonably failed to reach either conclusion—that the transactions were unauthorized, or an error occurred. Roselli does not sufficiently allege the facts and circumstances surrounding the transactions supported a claim for unauthorized use, in BOA's discretion, and that BOA still failed to fulfill its obligations under the Account Agreement. (*See* ECF No. 52 ¶¶ 102–22.) Plaintiffs' allegations do not support that BOA, "after an investigation, violated its duty to reimburse." *Hardin*, 2022 WL 3568568, at *5. Without more detailed factual allegations, Plaintiffs fail to state a claim for breach of the Account Agreement, and their allegations under the theories of investigation and reimbursement are dismissed. *See Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 930 ("Based on the plain language of the contract, Plaintiffs can't allege [BOA] breached its obligations under the Account Agreement simply by disagreeing with the outcome.").

Accordingly, BOA's Motion to Dismiss Roselli and the Class Members' claims for breach of contract (Count III) pursuant to Rule 12(b)(6) is **GRANTED**.

### D.      Breach of Fiduciary Duty (Count IV)

BOA argues Plaintiffs' claim for breach of fiduciary duty must be dismissed because relationships between banks and depositors do not give rise to fiduciary duties under New Jersey law. (ECF No. 55-1 at 21.) BOA asserts "[n]one of Plaintiffs' allegations are sufficient to elevate this common contractual relationship between a bank and depositor into a special relationship under New Jersey law." (*Id.*) BOA contends Plaintiffs' theories of recovery fail because: (1) access to personal or financial information does not render BOA a fiduciary; and (2) there is no legal basis for imposing a fiduciary duty on a financial institution that has an account(s) which contains funds received from a government benefits program. (*Id.* at 22.)

In opposition, Plaintiffs argue they have plausibly alleged the existence of a fiduciary relationship that is different from an ordinary bank-depositor relationship. (ECF No. 56 at 20.) Plaintiffs submit "courts in other jurisdictions like California have recognized that a bank owes a fiduciary duty to a depositor." (*Id.* at 21.) Plaintiffs assert "[t]he thrust of the inquiry [of other jurisdictions] is whether the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." (*Id.* at 22.) Based on their allegations, Plaintiffs contend that BOA "did not merely receive and process direct deposits of funds that happened to consist of State unemployment benefits, and given [BOA]'s control over the administration of the [LWD] benefits program in this matter, it cannot contend that it had no more than an ordinary banking relationship with those beneficiaries." (*Id.* at 24.)

In reply, BOA asserts "Plaintiffs acknowledge the well-settled proposition that the relationship between banks and their customers is not a fiduciary one, but nevertheless insist that 'the TAC plausibly alleges the existence of a fiduciary relationship that is different from an ordinary bank-depositor relationship,'" (ECF No. 57 at 9–10.) Further, BOA argues Plaintiffs rely "almost entirely on irrelevant case law that has nothing to do with banking relationships." (*Id.* at 10.)

In Count IV, Plaintiffs allege, in pertinent part, that:

> 171. [BOA] owes and continues to owe a fiduciary duty to Plaintiffs and Class Members. By virtue of its unequal bargaining power and its position as the financial institution charged with implementing LWD benefits programs, which gave [BOA] delegated authority to determine when, why, and how to deny Plaintiffs and Class Members access to LWD benefits to which they are entitled by freezing LWD Debit Card Accounts, as well as unbridled access to Plaintiffs' and Class Members' personal, confidential, and financial information, and because of [BOA]'s superior knowledge, business responsibilities and duties—including those provided by law or statute—and its absolute ability to control or otherwise manipulate Plaintiffs' and Class Members' LWD Debit Card Account data in

its system, [BOA] assumed a fiduciary duty to Plaintiffs and Class Members not to deny them access to their Account funds without reasonable basis, and to secure and maintain the personal, confidential, and financial information that it received from Plaintiffs and Class Members, free from unauthorized intrusion, theft, or other disclosure.

172. As a result of this relationship of trust and confidence, the unique nature of the LWD Debit Card Accounts that contain only LWD benefits, and the highly confidential nature of the records and data pertaining to Plaintiffs' and Class Members' LWD Debit Cards Accounts, and the [BOA]'s duties to maintain the privacy of such information, the Bank owed Plaintiffs and Class Members the highest degree of loyalty, honesty, fidelity, trust, and due care in its fiduciary obligations with respect to ensuring legitimate benefits recipients are not denied access to their Account funds, and with respect to securing and maintaining the privacy of their personal, confidential, and financial data in [BOA's] possession. In order to comply with such duty, [BOA] was required to use its utmost ability to ensure that legitimate benefits recipients are not denied access to their Account funds, and to protect, preserve, and secure Plaintiffs' and Class Members' private data and confidential information from unauthorized access, fraud, or theft and to take all necessary steps in order to do so, including encrypting such information and deploying sufficient data access security controls, EMV chips, and other measures, to frustrate and disable hackers, skimmers, cloners, or others from accessing such information for their personal profit or unlawful goals.

(ECF No. 52 ¶¶ 171–72.) Plaintiffs further allege BOA breached its fiduciary duties by failing to: (1) "take all adequate and necessary steps to ensure legitimate benefits recipients are not denied access to the Account funds without reasonable basis"; (2) "preserve, secure, and maintain the confidentiality and privacy of their LWD Debit Cards and Accounts and their personal, confidential, and financial information"; (3) "timely, fully, and adequately disclose that it had not taken the necessary steps to protect such information from unauthorized or fraudulent access and theft and that such information was at a heightened risk of breach by virtue of [BOA's] data security failings and policies"; and (4) "timely, fully, and adequately disclose that it had not taken the necessary steps to monitor for, detect, stop, and promptly notify Plaintiffs and Class Members

about suspicious transactions involving their Cards and Accounts." (*Id.* ¶ 173.)

To sufficiently allege a claim for breach of fiduciary duty, a plaintiff must plead the following elements: "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 3d 597, 633 (D.N.J. 2019). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *Fischell v. Cordis Corp.*, Civ. A. No. 16-00928, 2016 WL 5402207, at *7 (D.N.J. Sept. 26, 2016).

"Generally, 'there is no presumed fiduciary relationship between a bank and its customer.'" *Remtek Servs. v. Wells Fargo Bank, N.A.*, Civ. A. No. 19-12790, 2020 WL 241332, at *11 (D.N.J. Jan. 16, 2020) (quoting *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997); *see Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1998) ("Creditor-debtor relationships . . . rarely are found to give rise to a fiduciary duty."). However,

> [i]n *Kensey*, the Appellate Division of the New Jersey Superior Court articulated exceptions to the general rule that "creditor-debtor relationships rarely give rise to a fiduciary duty." Relying on the Restatement (Second) of Torts § 551, the Appellate Division explained that a duty may arise when a [bank] commits gross acts of misconduct or deceit, or under the "special circumstance" where a [bank] "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him."

*Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (quoting *Kensey*, 704 A.2d at 44–45).

Although the relationship between the parties here is not a typical "creditor-debtor relationship," Plaintiffs are pursuing claims against BOA for unauthorized transactions that may

typically arise under the standard creditor-debtor relationship. The Court finds Plaintiffs have failed to allege how BOA's relationship with Plaintiffs and Class Members rises to the level of special circumstances such that the Court should disavow the general rule that that there is no fiduciary duty between a bank and its customer. Indeed, Plaintiffs have not alleged that BOA encouraged Plaintiffs and Class Member to place "special trust or confidence in its advice." *Kensey*, 704 A.2d at 45. Plaintiffs conclusively allege there was a special relationship between the parties and rely on *Cal. Unemployment Benefits Litig.* in arguing that they have satisfied the factors applied by *courts in California*. (ECF No. 56 at 21–23.) The Court is not persuaded by this argument, and further finds that Plaintiffs have not sufficiently alleged nor argued a legal basis for imposing a fiduciary duty, *under New Jersey law*, upon a financial institution that disburses unemployment and other public benefits received from a government program.

Accordingly, BOA's Motion to Dismiss Plaintiffs' claim for breach of fiduciary duty (Count IV) is **GRANTED**.

### E. Violations of Federal Due Process Under the 14th Amendment, 42 U.S.C. § 1983 (Count V)

BOA argues Plaintiffs' claims for violations of federal due process under the 14th Amendment fail because: (1) BOA is not a state actor; (2) Plaintiffs have failed to allege a due process violation; and (3) Beaman's due process claim is time barred. (ECF No. 55-1 at 24–30.)

#### 1. Plaintiffs Have Adequately Alleged that BOA is a State Actor

BOA argues Plaintiffs fail to sufficiently allege that it is a state actor because the TAC fails to meet the public function and joint action tests. (ECF No. 55-1 at 24–28.)

In opposition, Plaintiffs assert BOA's role in the administration of unemployment benefits is a power traditionally reserved to a state. (ECF No. 56 at 25.) In analogizing this case to *Brown v. Stored Value Cards, Inc.*, Civ. A. No. 15-01370, 2016 WL 4491836, at *2 (D. Or. Aug. 25,

2016), *rev'd on other grounds*, 953 F.3d 567, 575 (9th Cir. 2020), Plaintiffs contend "[s]imilar to the situation in the *Brown* case, where the bank-issued debit card served as the sole state-provided avenue for the plaintiff to access her funds, the Plaintiffs contend that [BOA] possesses the 'exclusive contract' to distribute their LWD benefits through prepaid debit cards." (*Id.* at 26.) Plaintiffs further argue BOA is a state actor because in addition to being delegated "the public responsibilities pertaining to the dissemination of LWD benefits to Cardholders ([ECF No. 52] ¶ 185) through the issuance of debit cards . . . [LWD] has also expressly sanctioned and compelled BOA to collaboratively engage with LWD in the concerted effort to combat fraudulent enrollments in LWD benefits." (*Id.* at 26.)

In reply, BOA argues Plaintiffs' arguments are misplaced because although they "argue that [BOA] engaged in the 'administration' of unemployment benefits (Opp. at 25), [they] do not allege that [BOA] played any role in determining or revoking their benefits eligibility." (ECF No. 57 at 12.) BOA asserts Plaintiffs' characterization of BOA's LWD debit card as the "sole state-provided avenue" for benefits is contradicted by their allegations. (*Id.*) BOA reiterates Plaintiffs' claim fails under the joint action test. (*Id.* at 13.)[16]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the

---

[16] BOA also asserts "Plaintiffs' failure to address [BOA]'s application of the joint action analysis to this case (requiring [BOA] substituting its own judgment for LWD's) . . . or the argument that deposited funds are no longer owned by LWD . . . waives any opposition to both arguments." (*Id.* at 13 n.10.)

wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Supreme Court has stated that an otherwise private actor may be liable under § 1983 as a state actor in limited circumstances, including "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (citation omitted).

Plaintiffs allege that BOA is a state actor because "it is engaged in a joint undertaking with the State to provide and administer [unemployment insurance] and other LWD benefits under a mutually beneficial relationship and because it performs a function that is both traditional and exclusively governmental." (ECF No. 52 ¶ 180.) Plaintiffs further allege that BOA engages in "a traditional and exclusively governmental function in administering the LWD benefits payments programs as alleged herein pursuant to contractual authority generally delegated to it by LWD, including when it blocks or freezes Cardholder Accounts without specific authorization from LWD to do so and in violation of Cardholders' rights." (*Id.* ¶ 185.) Plaintiffs' allegations therefore implicate the issues of whether BOA performed a traditional, exclusive public function, and whether BOA acted jointly with the State of New Jersey pursuant to the Contract with LWD.

a.     The Public Function Test

"[T]o qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." *Manhattan Cmty. Access*, 587 U.S. at 809 (alteration in original) (citations omitted). "The [Supreme] Court has stressed that 'very few' functions fall into that category." *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). For instance, in *American Mfrs. Mut. Ins. Co. v. Sullivan*, the Supreme Court held that "a *private insurer's* decision to withhold payment for

disputed medical treatment [is not] fairly attributable to the State so as to subject insurers to the constraints of the Fourteenth Amendment." 526 U.S. 40, 51 (1999).

Plaintiffs primarily rely upon *Brown* to support their argument that they have plausibly alleged BOA performed a function that is traditionally and exclusively reserved to the State. (*See* ECF No. 56 at 25–26.) In *Brown*, the plaintiff was held in state custody and when she was released, the plaintiff received a preloaded debit card equivalent to the cash in possession at booking. 2016 WL 4491836, at *1. The District of Oregon found that plaintiff satisfied the public function test because the relationship between plaintiff and the private defendants was "one that could only come about through the exercise of the state's power. The state confiscated [plaintiff]'s money and left her no choice on how to retrieve it." *Id.* at 2.

Here, Plaintiffs do not allege that BOA's debit cards were the "exclusive means" for Plaintiffs and Class Members to have received their public benefits. Instead, Plaintiffs allege that they could have chosen to receive checks from LWD (*see* ECF No. 52 ¶¶ 56), and even acknowledge that "Plaintiffs had the initial choice on how to receive benefits," (ECF No. 56 at 27). *Compare Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 941 ("Because [BOA]-provided debit cards were held out as the exclusive means of receiving [unemployment] benefits, the [master consolidated complaint] plausibly alleges that the relationship between Plaintiffs and [BOA] only came about 'through the exercise of the state's power.'") (quoting *Brown*, 2016 WL 4491836, at *2), *Brown*, 2016 WL 4491836, at *2 (noting the plaintiff had "no choice on how to retrieve" her money) *with* (ECF No. 52 ¶ 17 ("On information and belief, continuing in to 2020 and beyond LWD began distributing LWD benefits pursuant to its contract with [BOA], under which the default means of distributing LWD benefits payments has been through Bank-issued and Bank-administered LWD Debit Cards . . . ."), *id.* ¶ 170 (alleging Plaintiffs and Class Members

had the capability to "opt out of the default option of receiving their LWD benefits payment through LWD Debit Cards")).

Notwithstanding, the Court is guided by the Southern District of California's discussion in *Cal. Unemployment Benefits Litig.* where the district court applied nearly identical factual allegations as here and found that the master consolidated complaint plausibly alleged "[BOA]'s role in administering the distribution of [unemployment] benefits is a function that is both traditionally and exclusively governmental." 674 F. Supp. 3d at 941 (internal quotation marks and citation omitted). In this case, Plaintiffs allege BOA had an exclusive contract with the LWD to administer unemployment benefits and other benefit payments. (ECF No. 52 ¶ 12.) Plaintiffs further allege BOA acted "pursuant to contractual authority generally delegated to it by LWD." (*Id.* ¶ 185.) Just as in *Brown*, the relationship between Plaintiffs and BOA came about "through the exercise of the state's power." 2016 WL 4491836, at *2. Drawing all inferences in favor of Plaintiffs as the non-moving party, the Court finds that Plaintiffs have plausibly alleged that BOA actions qualify as a traditional, exclusive public function. *See Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 941; *Cahoo v. SAS Inst. Inc.*, 322 F. Supp. 3d 772, 793 (E.D. Mich. 2018), *aff'd in part*, *rev'd in part on other grounds sub nom.*, *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887 (6th Cir. 2019) ("[T]here is no question that that the administration of unemployment benefits is a power traditionally exclusively reserved to the State."). At this stage, it would be unreasonable to dismiss Plaintiffs' due process claims on the basis that BOA was not acting in a public function in their role of administering the distribution of LWD benefits.[17]

Accordingly, BOA's Motion to Dismiss Count V for failure to sufficiently allege that BOA

---

[17] As the Court has found that the TAC satisfies the public function test, it is not necessary for the Court to undertake an analysis of the joint action test. *See Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d at 941.

is a state actor is **DENIED**.

2.    <u>Plaintiffs Have Adequately Alleged a Deprivation of Due Process</u>

Alternatively, BOA argues Count V fails because Plaintiffs have failed to adequately allege a due process violation. (ECF No. 55-1 at 28–29.) In its underlying brief, BOA submits the sole argument that is "has a compelling interest in preventing fraud, and it is not only reasonable, but [it] is [also] completely logical, to freeze accounts without advance notice." (*Id.* at 28.)

In opposition, Plaintiffs argue BOA's reliance on the limited exception that an "interest in preventing fraud justifies the practice of freezing accounts without prior notice" is misplaced. (ECF No. 56 at 28–29.) Additionally, Plaintiffs submit they have sufficiently alleged a due process violation because they allege that BOA: (1) failed to provide reasonable post-deprivation notice or an opportunity to be heard; and (2) persistently denied access to accounts even after cardholders re-verified their entitlement to benefits. (*Id.* at 29.)

In reply, BOA argues Plaintiffs have failed to allege a deprivation of a property interest because the "allegations establish that an account freeze does not cut off eligibility or entitlement to benefits—it just requires the benefits recipients to choose a different delivery method." (ECF No. 57 at 13.) Additionally, BOA submits the pre-deprivation process for previously deposited funds "can be suspended if it would be 'impractical.'" (*Id.* at 14 (quoting *Vatner v. Board of Trs. of the Univ. of Med.*, Civ. A. No. 12-3339, 2015 WL 461901, at *10 (D.N.J. Feb. 4, 2015)).) BOA asserts the TAC concedes that BOA provided a post-deprivation process for account freezes. (*Id.*)[18]

---

[18] The Court will not consider these arguments as they are new arguments which BOA cannot raise for the first time in a reply brief. *See Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004) ("[A]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court."); *see also Dana Transp. v. Ableco Fin.*, Civ. A. No. 04-2781, 2005 WL 2000152, at *6 (D.N.J. Aug. 17, 2005) (holding that it is axiomatic in federal practice that arguments raised for the first time in a reply brief should be disregarded). BOA's arguments relating to the substantive sufficiency of the

"The essential requirements of any due process claim are notice and the opportunity to be heard." *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x 211, 220 (3d Cir. 2005) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). "[D]ue process, unlike some legal rules is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009)) (internal quotation marks and citations omitted). To state a procedural due process claim, Plaintiffs "must show that the Defendant[] deprived him of a protected property interest and that the state procedure for challenging the deprivation was constitutionally inadequate." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 237 (3d Cir. 2011) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir. 2010)). "To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

It is undisputed that Plaintiffs have a constitutionally protected property interest in the public benefits that LWD provided. *See Wilkinson v. Abrams*, 627 F.2d 650, 664 (3d Cir. 1980) ("State statutes providing for the payment of unemployment compensation benefits create in the claimants for those benefits property interests protected by due process."); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (holding procedural due process applies "to the withdrawal of public

---

allegations of a deprivation of due process can be re-raised, if applicable, in a motion to dismiss Plaintiffs' amended pleading.

assistance benefits" and "disqualification for unemployment compensation"). Based on Plaintiffs' allegations that BOA's account freezes were caused by a Faulty Claim Fraud Filter and allegations that BOA failed to provide reasonable post-deprivation notice or an opportunity to be heard by denying access to accounts even after cardholders re-verified their identity, the Court finds that Plaintiffs have adequately alleged a claim for deprivation of due process "that is plausible on its face." *Iqbal*, 556 U.S. at 678.[19] BOA's Motion to Dismiss Count V for failure to allege a deprivation of due process is **DENIED**.

### 3. Beaman's Due Process Claim is Time Barred

BOA argues Beaman's due process claim is barred by the statute of limitations because she was aware of the facts giving rise to this cause of action in May 2021. (ECF No. 55-1 at 29.) In opposition, Plaintiffs assert equitable tolling pursuant to the "continuing violations" doctrine should be applied here because: (1) BOA has failed to give her access to her account and her unemployment funds to this day; and (2) BOA's "faulty fraud filter has resulted in misleading Beaman regarding there being alleged 'fraud' on her account." (ECF No. 56 at 29.)[20] In reply, BOA contends Plaintiffs' arguments regarding equitable tolling are misplaced because Plaintiffs rely on cases unrelated to banking. (ECF No. 57 at 12 n.9.)

---

[19] The Court is again guided by guided by the Southern District of California's discussion in *Cal. Unemployment Benefits Litig.* where the district court applied the *Mathews* test and held that the master consolidated complaint "states a claim for a due process violation by alleging [BOA] deprived Plaintiffs of a protected property interest without providing adequate due process." 674 F. Supp. 3d at 942–43.

[20] Plaintiffs cite to *Barron v. Gersten*, 277 A.3d 502 (N.J. Super. Ct. App. Div. 2022) for the assertion that equitable tolling should be applied here. However, *Barron* noted that "[a]bsent a showing of intentional inducement or trickery by a defendant, [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." 277 A.3d at 505 (alterations in original) (quoting *Binder v. Price Waterhouse & Co., L.L.P.*, 923 A.2d 293, 298 (N.J. Super. Ct. App. Div. 2007)). The TAC does not contain allegations of intentional inducement or trickery.

Typically, "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In this circuit, however, a defendant may succeed on a motion to dismiss on the basis of statute of limitations, "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002)) (quotations omitted).

Here, Beaman alleges that in May 2021 "her card was declined while attempting to complete a transaction," "[s]he discovered there was a total of $300 in unauthorized transactions," and she called BOA and "set forth the reasons for her belief that errors had occurred." (ECF No. 52 ¶¶ 80–81, 83–84.) Both parties seemingly agree that the relevant statute of limitations as to Beaman's due process claim is two years. "In New Jersey, claims brought under [42 U.S.C. § 1983] are subject to a two-year statute of limitations." *Hawkins v. Feder*, Civ. A. No. 07-4005, 2008 WL 3192973, at *2 (D.N.J. Aug. 5, 2008); *see also Cito v. Bridgewater Twp. Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989) ("The statute of limitations for any Section 1983 claim is the state statute which limits actions for personal injuries" which in New Jersey is "within two years of accrual of the cause of action."). Therefore, because Beaman brought her due process claim on September 28, 2023, and since her claim accrued earlier than September 28, 2021, her claim is barred by the applicable statute of limitations unless an exception applies.

Although Beaman alleges that BOA "has stilled failed to give her access to her account and her unemployment funds," (ECF No. 52 ¶ 92), the Court finds that Plaintiffs' arguments related to the "continuing violations" doctrine are misguided. "The continuing violations doctrine is . . . an 'equitable exception to the timely filing requirement.'" *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 84 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263

F.3d 286, 292 (3d Cir. 2001)). This equitable exception is applicable "where the conduct complained of consists of a pattern that has only become cognizable as illegal over time." *Foster v. Morris*, 208 F. App'x 174, 177 (3d Cir. 2006) (citing *Cowell*, 263 F.3d at 292). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Foster*, 208 F. App'x at 177–78 (quoting *Brenner v. United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1295 (3d Cir. 1991) (marks omitted)). "Courts consider two factors in determining whether to apply the continuing violations doctrine: (1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett*, 592 F. App'x at 84 (citing *Cowell*, 263 F.3d at 292 and *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166 (3d Cir. 2013)).

However, the Third Circuit has cautioned "the continuing violations doctrine is not a substitute for a plaintiff's 'awareness of and duty to assert his/her rights' in a timely fashion." *Bennett*, 592 F. App'x at 85 (quoting *Cowell*, 263 F.3d at 295). As such, "the doctrine 'does not apply when plaintiffs are aware of the injury at the time it occurred.'" *Bennett*, 592 F. App'x at 85 (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)); *see also Muhammad*, 483 F. App'x at 762 ("The District Court correctly reasoned that . . . the continuing violations doctrine did not apply because [the plaintiff] should have been aware of each act's negative impact at the time it occurred."); *Zied v. Barnhart*, 418 F. App'x 109, 114 (3d Cir. 2011) ("[A]s explained by the District Court, the continuing violations doctrine for extending a statute of limitation does not apply to injuries that occurred before the filing period if the plaintiff was aware, as Zied was, of those injuries at the time they occurred.").

Based on the foregoing, the Court finds the continuing violations doctrine does not apply

to Beaman's time-barred claim for deprivation of due process. In May 2021, Beaman was aware that her account was frozen restricting her access to her unemployment benefits. The fact that Beaman's account is still restricted does not necessitate the application of equitable tolling. Therefore, BOA's Motion to Dismiss Beaman's due process claim as untimely is **GRANTED**.[21]

Accordingly, BOA's Motion to Dismiss Plaintiffs' claims for Violations of Federal Due Process Under the 14th Amendment, 42 U.S.C. § 1983 (Count V) is **GRANTED IN PART** and **DENIED IN PART**.

### F.    Unjust Enrichment and Money Had and Received (Count VI)

BOA submits "Plaintiffs have chosen to label their sixth cause of action as a combination of unjust enrichment and money had and received instead of just one or the other, perhaps in an attempt to increase the chances of that 'claim' surviving." (ECF No. 55-1 at 30.) BOA asserts Count VI fails under either theory of recovery. (*Id.* at 30–32.) BOA argues Plaintiffs have failed to plead a *prima facie* claim for unjust enrichment because they have failed to allege an "expected renumeration" and they have not identified the benefit that BOA received and retained. (*Id.* at 31.) BOA further asserts "Plaintiffs' unjust enrichment claim fails because they have failed to allege

---

[21] There may be a "relation back" argument to be made. As noted above, however, "it is not the Court's job 'to research and construct legal arguments open to parties, especially when they are represented by counsel.'" *Schneider's Dairy*, 2013 WL 6485367, at *2 (quoting *330 West Hubbard*, 203 F.3d at 997). Federal rules allow "[a]n amendment to a pleading [to] relate[ ] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c). "Where an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality." *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012). "[A]pplication of Rule 15(c)(1)(B) normally entails a search for a common core of operative facts in the two pleadings." *Id.* (citation and quotation marks omitted). "[O]nly where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed." *Id.* As claims should be decided on the merits, the Court will permit Plaintiffs to raise this argument should they file an amended pleading.

that [BOA] was unjustly enriched independent of any alleged breaches of contract." (*Id.*) BOA contends Plaintiffs' claim for money had and received fails for the same reasons as their unjust enrichment claim. (*Id.* at 32.)

In opposition, Plaintiffs argue they have adequately pleaded their claims for unjust enrichment and money had and received because they allege that BOA "has received and improperly retained or seized funds belonging to Plaintiffs, and also failed to cover Plaintiffs' losses for fraudulent tractions which [BOA] was required to reimburse to Plaintiffs." (ECF No. 56 at 30.) Based on these allegations, Plaintiffs assert BOA "has unjustly enriched itself at the expense of Plaintiffs by receiving the benefit of and retaining funds which, in equity and good conscience belong to Plaintiffs, and retention of that benefit without payment would be unjust." (*Id.*) Plaintiffs further contend BOA "is incorrect when it states that the existence of a contractual relationship precludes unjust enrichment" as Plaintiffs "may state a claim for breach of contract, premised on the existence of a valid contract, and alternatively, state a claim for unjust enrichment, premised on the nonexistence of a valid contract." (*Id.* at 31.)

In reply, BOA reasserts that the Court must dismiss Plaintiffs' claims for unjust enrichment and money had and received because they are duplicative of Plaintiffs' claim for breach of contract. (ECF No. 57 at 14–15.) BOA submits Plaintiffs have failed to allege a *prima facie* claim for unjust enrichment because they do not allege that BOA "retained or benefitted from the funds that were allegedly frozen or stolen." (*Id.* at 15.) BOA further contends "Plaintiffs fail to defend their money had and received claim in their opposition and thus abandon it." (*Id.*)

In Count VI, Plaintiffs allege that:

> 189. Through the receipt and seizure of funds designated for Plaintiffs and the Classes, [BOA] has been unjustly enriched through the receipt of such sums, which, in equity and good conscience, it ought not be entitled to retain.

190. Plaintiffs and the other Class members have lost funds or, in the alternative, [BOA] has not expended funds to cover fraudulent losses which [BOA] was obligated to cover under its contracts and pursuant to federal law. [BOA], in good equity and good conscience, has no right to retain these improperly attained or retained funds.

191. Plaintiffs and the other Class members are entitled to a return of the monies [BOA] is holding unjustly or has avoided paying in violation of law.

(ECF No. 52 ¶¶ 189–91.)

To sufficiently plead a claim for unjust enrichment in New Jersey, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected renumeration' and the failure to give renumeration unjustly enriched the defendant." *EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Put another way, "unjust enrichment 'requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes v. Panasonic Consumer Elecs. Corp.*, Civ. A. No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *VRG Corp.*, 641 A.2d at 526). Further, "the equitable remedy of unjust enrichment is not available when there is a valid contract" between the parties. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. A. No. 06-4449, 2009 WL 900758, at *7 (D.N.J. Mar. 31, 2009) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)).

Here, the Court finds that Plaintiffs' claim for unjust enrichment fails because Plaintiffs do not allege: (1) that they conferred a benefit on BOA from which Plaintiffs expected renumeration at the time it performed or conferred the benefit on BOA; and (2) that BOA was enriched beyond its contractual rights. (*See* ECF No. 52 ¶¶ 189–91.) Plaintiffs' claim that BOA was unjustly

enriched by the benefit of receiving and retaining funds from the unauthorized transactions is questionable at best because it is unclear what benefit BOA received from the unauthorized transactions. (*See id.* ¶¶ 189–90.) Further, Plaintiffs rely on impermissible legal conclusions that BOA was unjustly enriched. *See Papasan*, 478 U.S. at 286; *Iqbal*, 556 U.S. at 678; *see also Swift v. Pandey*, Civ. A. No. 13-0650, 2016 WL 4267947, at *3 (D.N.J. Aug. 10, 2016) (noting that "vague and conclusory allegations do not pass muster" for unjust enrichment claims).

To the extent Plaintiffs' unjust enrichment claim is predicated on BOA's failure to "expend[] funds to cover fraudulent losses which [BOA] was obligated to cover under its contracts," (ECF No. 52 ¶ 190), this theory of recovery for unjust enrichment also fails because Plaintiffs cannot rely upon alleged breaches of contract to sustain an unjust enrichment claim. *See Goldsmith v. Camden Cnty. Surrogate's Off.*, 975 A.2d 459, 463 (N.J. Super. Ct. App. Div. 2009) ("Unjust enrichment is not an independent theory of liability but is the basis for a claim of quasi-contractual liability.") (citation omitted); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) ("A quasi-contract claim cannot exist when there is an *enforceable* agreement between parties.") (alteration in original) (citing *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966)); *see also Dunham v. Wells Fargo Bank*, Civ. A. No. 18-08995, 2019 WL 9657790, at *4 (D.N.J. Nov. 6, 2019) (noting that "Plaintiff's unjust enrichment claim is likely barred by the existence of an express contract").

Accordingly, BOA's Motion to Dismiss Plaintiffs' claims for unjust enrichment and money had and received[22] (Count VI) is **GRANTED**.

---

[22] *See Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 380–81 (D.N.J. 2021) (noting the elements of a claim for money had and received "are essentially the same as those for unjust enrichment," and holding that "the claims for money had and received fails for the same reasons as the unjust enrichment claim").

## IV.  CONCLUSION

For the reasons set forth above, BOA's Motion to Dismiss (ECF No. 55) is **GRANTED IN PART** and **DENIED IN PART**. As to the portions of BOA's Motion that are granted, Plaintiffs' claims are **dismissed without prejudice**, unless otherwise specified. The Court will allow Plaintiffs one final opportunity to amend their pleading.[23] Plaintiffs may file a Fourth Amended Complaint within twenty-one days curing the deficiencies addressed herein. Failure to timely file a Fourth Amended Class Action Complaint will result in the dismissals of claims without prejudice being converted to dismissals with prejudice.

/s/ Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  June 28, 2024

---

[23] Federal Rule of Civil Procedure 15(a) allows a party to amend its pleadings after obtaining the Court's leave or the written consent of its adversary. Under this liberal rule, the Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (citation omitted). Given the important interest at stake, the restriction of access to unemployment benefits, the Court will give Plaintiffs leave to amend.